# Hester A. Grimes *v.* A. R. Shirk, Appellant.

*Will—Rule in Shelley's case—Life estate.*

Testator directed as follows: " I give and devise to my adopted daughter Hester . . . . all that certain messuage . . . . for and during the term of her natural life. And after the death of my said adopted daughter, I give and devise the reversion or remainder of the real estate herein devised to her, to her lawful issue, to have and to hold the same in common to them, their heirs and assigns forever. And in case the said Hester should die without leaving lawful issue, then the aforesaid real estate shall revert to my estate, and I give and devise the same to my heirs under the intestate laws." *Held,* that Hester took an estate in fee in the land devised to her.

Argued May 23, 1895. Appeal, No. 69, July T., 1895, by defendant, from judgment of C. P. Lancaster Co., May T., 1895, No. 39, for plaintiff on case stated. Before STERRETT, C. J. WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Case stated to determine title to real estate.

The material portions of the case stated appear by the opinion of the court by LIVINGSTON, P. J., which was as follows:

" This case stated is in the nature of an amicable action to ascertain, test and determine the estate of Hester A. Grimes in a certain devise under the will of Francis Bright, deceased.

" The following facts are agreed upon and admitted by plaintiff and defendant in the above issue, to be submitted to the court for its consideration, determination and judgment.

"1. Francis Bright, of the City of Reading, died, having made his last will and testament, which has been duly proved in the register's office of Berks county, and which directs, inter alia, as follows:

"' ITEM: I give and devise unto my adopted daughter, Hester Ann Grimes, wife of Daniel Grimes, all that certain messuage, tenement and lot of ground, with the buildings thereon erected, situate on the Corner of Washington and Ash streets, in said city of Reading, now occupied by George Whitaker, with the appurtenances: Also, the two lower, or southern frame dwelling houses and lots or pieces of ground whereon the same are erected, situate on North Third street, in said city, containing in front sixty feet to Crouse's line, and in depth east and west,

one hundred feet, with the appurtenances; to have and to hold the said several messuages, lots and pieces of ground, with the appurtenances, for and during the term of her natural life.

" ' And after the death of my said adopted daughter Hester Ann Grimes, I give and devise the reversion or remainder of the real estate herein devised to her, to her lawful issue; to have and to hold the same in common to them, their heirs and assigns forever.

" ' And in case the said Hester should die without leaving lawful issue, then the aforesaid real estate shall revert to my estate, and I give and devise the same to my heirs under the intestate laws of the Commonwealth of Pennsylvania.'

" 2. At the time of said devise, and at the time of the death of said testator, he was the owner in fee simple of the property described in the said item of said will as ' the two lower or southern frame dwelling houses and lots or pieces of ground whereon the same are erected, situate on North Third street, in said city (of Reading), containing in front sixty feet to Crouse's line and in depth east and west one hundred feet, with the appurtenances.' The testator left no debts that have not been paid, Hester A. Grimes has not aliened said lot of ground nor put any incumbrances thereon.

" 3. On the 1st day of April, 1895, articles of agreement were entered into between Hester A. Grimes, the plaintiff in this action, and Daniel Grimes, her husband, of the one part, and A. R. Shirk, of the other part, all of East Cocalico township, Lancaster county, for the sale of a part of the above described premises, namely, a lot of ground thirty feet on North Third street, in the city of Reading, and extending one hundred feet in depth, being the southern part of the above described tract, for fifteen hundred dollars ($1,500), payable April 13, 1895, on the delivery of the deed\ On April 13, 1895, the said Hester A. Grimes and Daniel Grimes, her husband, tendered to the said A. R. Shirk a deed, sufficient and correct in form, for the above described premises and demanded the purchase money, fifteen hundred dollars ($1,500), according to the agreement, which the said A. R. Shirk declined and refused to pay, admitting that the deed was sufficient in form, but averring that under the will of Francis Bright, the estate of the said Hester A. Grimes in said property was a life estate,

and not a fee simple, and that she and her husband could not make a legal conveyance in fee simple, of the said premises.

" 4. If the court shall be of the opinion that under said item of the said will of the said Francis Bright, the estate devised to Hester A. Grimes, in said property is a fee simple, and that her conveyance of the same, joined in by her husband, makes a good legal title to the fee of said property, judgment shall be entered for the plaintiff in the sum of fifteen hundred dollars ($1,500).

" If the court shall be of opinion, that the estate of the said Hester A. Grimes, under said devise, is not a fee simple, but is simply a life estate, judgment to be entered for the defendant, with costs; each party reserving to himself and herself the right of appeal, writ of error, and certiorari to the Supreme Court.

" It is claimed by the plaintiff, that Hester A. Grimes under this will, takes and has a fee simple.

" And by the defendant, that Hester A. Grimes takes and has under this will but a life estate. Certain rules have been stated, which may aid us in arriving at a correct conclusion.

" The first to which we shall refer is the rule in Shelley's Case : 1 Rep. 104, A. (Coke).

" ' 1. When the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited, either mediately or immediately, to his heirs in fee, or in tail, " the heirs " are words in limitation of the estate, and not words of purchase.'

" This rule in Shelley's case is a rule of law, and not simply of construction, and where the language used in the instrument brings the case within the rule, the fact that it was the intention of the grantor, or devisor, that the rule should not operate, is of no importance : Fearne on Contingent Rem., 188 ; 2 Jar. on Wills (5 Am. ed.), 332; Hileman v. Bouslaugh, 13 Pa. 344 ; Kleppner v. Laverty, 70 Pa. 70 ; List v. Rodney, 83 Pa. 483 ; Rummell v. Dilworth, 111 Pa. 344.

" And so imperative is the rule that, although there be an express declaration that the ancestor shall only take and have a life estate, yet this expressed intention will not defeat its operation : 2 Washb. Real Prop. 5th ed. 652; Harvey v. Schuyler, 11 Am. State Rep. 92.

" ' 2. The word " issue " standing alone in a will, that is, without some unequivocal contrary intent apparent is to be taken as a word of limitation, similiar in import with " heirs of the body," and if an estate be limited to a man and his issue, he will take an estate tail, which, if the will goes into effect, since the date of the act of April 27, 1855, will be turned into a fee simple.'

" It would, therefore, seem on principle at least, that as ' issue ' prima facie is a word of limitation, synonymous with ' heirs of the body,' that, until this prima facie meaning is rebutted, it should be subject to the rules of law in precisely the same manner.

" 3. Where an estate is limited to the ancestor for life, remainder to his issue, and the word issue is construed to be a word of limitation, the estate limited to the issue will vest in the ancestor, and he will take an estate tail by force of the rule in Shelley's case, or by analogy to it. A condition necessarily implied will have no effect in restraining the meaning of the word, or the force of the rule. But, although presumptively issue is a word of limitation, that presumption may be rebutted by words showing a contrary lawful intent; but such words must be unequivocal, and there are many such which at first sight would seem to be sufficiently unequivocal, but which have been adjudged not to be so; for instance, words of distributive modification have not been held to be conclusive, though they clearly indicate an intention on the part of the testator that the issue should take in a manner entirely inconsistent with the course of devolution in an estate tail, as we shall see when we come to refer to decisions in which this rule, or point, has been raised.

" 4. Where the gift to the issue is accompanied by words of distributive modification. While this is a strong indication of an intent to give an estate to the issue by purchase, it is not sufficiently strong to overcome the prima facie meaning of the word; and this is true, where the gift to the issue is in fee or in tail.

" 5. Where superadded words of limitation and of distributive modification both annexed to the devise to the issue, will be sufficient to show that the intent of the testator was that the issue should not take through the ancestor, but that a new line

of descent should commence with them.   They will therefore take as purchasers in fee or in tail.

"6. Where the devise over is limited on a dying without leaving issue—these words import an indefinite failure of issue —though if the estate of the ulterior devisee is for life, or before the act of 1833, indefinite, the failure will necessarily be restricted to the lifetime.

"There are other rules to which we might refer, as where the word issue, and children, are used interchangeably.   Where there is a devise over on failure of issue living, etc., etc., but as they do not appear to apply to the case before us, we omit them.

"The words in this will which we are to consider and construe, are: 'I give and devise unto my adopted daughter, Hester A. Grimes, . . . .; to have and to hold the said several messuages, lots and pieces of ground, with the appurtenances, for and during the term of her natural life.   And, after the death of my said adopted daughter, Hester Ann Grimes, I give and devise the reversion or remainder of the real estate herein devised to her, to her lawful issue, to have and to hold the same in common to them, their heirs and assigns forever.   And in case the said Hester should die without leaving lawful issue, then the aforesaid real estate shall revert to my estate, and I give and devise the same to my heirs under the intestate laws of the commonwealth of Pennsylvania.'

"'To her lawful issue, their heirs and assigns forever.'

"The word 'issue,' besides being in common parlance a word of more than one meaning, has also been the subject of much doubt and discussion as regards its legal signification; some of the judges being of the opinion that it was an apt word of limitation, while others were of opinion that it was presumptively a word of purchase; but the weight of authority being greatly against this last position, it has generally been abandoned.

"This is shown by the language of Judge STRONG, in Angle v. Brosius, 43 Pa. 187, where he says: 'The word "issue" is well adapted for a word of limitation, having much more aptitude for such a use, than it has to designate the objects of a gift.   In signification it very nearly resembles the technical phrase, "heirs of the body," and indeed, the two were used as synonyms in the Statute De Donis.   Hence, it has long been settled that where real estate is devised by one or more limitations, in the

same will to a person and his issue, the word "issue" will be construed as a word of limitation, so as to give the ancestor an estate tail, unless there are expressions in the will unequivocally indicative of a contrary intention.'

"The case of Paxson v. Lefferts, 3 Rawle, 59, is a fair example of the application of the rule.　The devise in that case was 'to A for life, and if he leave issue, to them in fee,' and a devise over on failure of such issue.　The devise over had no effect whatever, as it, being on failure 'of such' issue, was equally applicable to the contingency of the lack of issue, or their extinction.　The ancestor was held to take an estate tail, and it was expressly decided that the devise was not without the rule in Shelley's case.

"Kleppner v. Laverty, 70 Pa. 70, was almost identical with the last case cited.　The devise was: 'To A, during her natural life, upon the happening of her death, to her lawful issue, should she leave any.'　In default of such 'lawful issue, over,' the rule in Shelley's case was held to apply.

"In Hoff's Est., 147 Pa. 636, the testator provided 'in case either of my daughters shall die without issue, either before, or after the decease of my wife, then the amount of their share or shares in the residue of the estate shall revert back to the remainder of my children, share and share alike; my said sons . . . . and my daughter . . . . are to hold in trust, the share or shares that such of my daughters as may be without issue, before or after the death of my wife, may be entitled to and invest their legacies in bonds, and pay to them the interest thereon semi-annually.'

"It was held on the authority of Eichelberger v. Barnitz, and the line of cases following that decision, that the words 'shall die without issue,' must be construed to mean an indefinite failure of issue, and hence, that the legatee took an absolute estate in the fee.　See also, Vaughan v. Dickens, 20 Pa. 509; Eichelberger v. Barnitz, 9 Watts, 447; Amelia Smith's App., 23 Pa. 9.

"In Lawrence v. Lawrence, 105 Pa. 339, Mr. Justice TRUNKEY held that the established interpretation of words of limitation on failure of issue, where the terms were, 'if he die without issue,' in the absence of all words making a different intent apparent, is that these import a generally indefinite fail-

ure of issue, and not a failure at the first taker's death. See 2 Jarm. on Wills, 497.

"In Hackney v. Tracy, 137 Pa. 53, GREEN, J., says: 'In one of our most recent cases, Reinoehl v. Shirk, 119 Pa. 108, our brother STERRETT, in delivering the opinion of the court, said, "Standing alone, therefore, the words 'die without leaving issue,' and other expressions of the same import, mean an indefinite failure of issue: Taylor v. Taylor, 63 Pa. 481; Middleswarth v. Blackmore, 74 Pa. 414: At common law, in the absence of words making a different intent apparent, the established interpretation of such expressions in a will is that they import a general indefinite failure of issue, and not a failure at the death of the first taker; and such has undoubtedly been the rule in this state, since Eichelberger v. Barnitz, 9 Watts, 447."' See also, Reinoehl v. Shirk, 119 Pa. 108; Taylor v. Taylor, 63 Pa. 481; Middleswarth v. Blackmore, 74 Pa. 414; Lapsley v. Lapsley, 9 Pa. 130; Matlack v. Roberts, 54 Pa. 148.

"The defendant contends, that as the testator, after giving a life estate to Hester Ann Grimes, and giving the remainder to her lawful issue, provides how they shall hold it, (in common) and adds words of limitation to the issue, showing that he intended the issue to take a title in fee simple, and to hold the same in common, this gives a title to the lawful issue by purchase, and not by descent, and makes the estate of Hester Ann Grimes, a life estate and not an estate in fee tail, which under the act of 1855, would be an estate in fee simple, and refers to Hawkins on Wills, 191, where it is said, the rule is 'when there is a devise to one for life, with remainder to his issue, as tenants in common, with a limitation to the heirs general of the issue, the issue take as purchaser in fee,' citing: Findlay v. Riddle, 3 Binn. 139, 'where the devise was to A. during his natural life, and after his decease, if he shall die leaving issue, to his heirs as tenants in common, and their respective heirs and assigns forever.' By the devise over,—'But, in case he shall die without leaving lawful issue,' etc.—it was held that A took a life estate.

"In Powell v. Board of Missions, 49 Pa. 46, the devise was, 'to A for his natural life, and after his decease, if he shall die leaving lawful issue, to such issue, if one in fee, if more than one, to be equally divided in fee. The devise over,—But, if

A should die without lawful issue, then over,—held that A took a life estate.

"In Robbins v. Quinliven, 79 Pa. 333, the devise was to 'A for her natural life, and after her death, to her issue and their heirs forever; in the proportions to which they would be entitled, under the intestate laws of Pennsylvania.' There was no devise over—it was held that A took a life estate.

"In O'Rouke v. Sherwin, 156 Pa. 285, it is said, the word 'issue' in a will, prima facie means 'heirs of the body,' and in the absence of explanatory words, showing that it was used in a restricted sense, is to be construed as a word of limitation, but, if there be on the face of the will sufficient to show that the word was intended to have a less extended meaning, and to be applied only to children, or to decedents of a particular class, or at a particular time, it is to be construed as a word of purchase, and not of limitation, in order to effectuate the intention of the testator.

"There are some other cases of this same class which might be referred to, but, as we have seen, cases of this class are generally decided upon some clause of the will containing the devise, which indicates the intention of the testator to have been, that the heirs should not take by descent, but as a purchaser.

"The rule in Shelley's case is a rule of law, and not of construction. Where the language used in the instrument brings the case within the rule, the fact that it was the intention of the grantor or devisor, that the rule should not operate is of no importance: Fearne on Contingent Rem. 188; Hayes' Real Est., 95; Hileman v. Bouslaugh, 13 Pa. 344; List v. Rodney, 83 Pa. 483; Kleppner v. Laverty, 70 Pa. 70.

"So imperative is the rule that, though there be an express declaration that the ancestor shall only have a life estate, yet this expressed intention will not defeat its operation. This principle has unfortunately been more than once overlooked, some cases regarding the rule as merely one of construction, yielding to the manifest intention of the testator. Among these are Findlay v. Riddle, and the cases above referred to as following it: 2 Washb. Real Prop. 5th ed. 652; Doebler's App., 64 Pa. 9; Marburg v. Cole, 49 Md. 406.

"In Findlay v. Riddle, supra, cited in 22 Am. & Eng. Ency. of Law, 501, the court seemed to lean strongly against apply-

ing the rule when the intention that the first taker should have only a life estate was perfectly plain.   But the Pennsylvania courts have since unhesitatingly applied the rule regardless of the intention, when the subsequent limitation was to heirs, qua heirs.

"The proper rule or method of applying the rule in Shelley's case is said to be this : ' Interpret the deed or will, by the ordinary rules of construction, precisely as if this rule had no existence.'   Then having ascertained the testator's intention, look at this rule and see whether such intention conflicts with it, if it does, the rule must be applied, for it is absolute and has no exception.

"In Crockett v. Robinson, 46 N. H. 454, the devise was, to J. and C. to be equally divided between them, and their heirs, if they have any lawful heirs at the time of their decease ; and if they have no lawful heirs at the time of their decease, to be equally divided between the children of a sister of J. and C. . . . . Having interpreted the will, the court then applied the rule in Shelley's case and held that J. and C. took estates tail, which by the statute of New Hampshire abolishing estates tail, were turned into fee simple.

"Words of distributive modification, or the words tenants in common, have not been held conclusive, though they clearly indicate an intention, on the part of the testator, that the issue should take in a manner wholly inconsistent with the course of devolution in an estate tail.   The cases in which this point has arisen are numerous, but as the decisions have been but one way, we shall refer to but a few of them :

"In Curtis v. Longstreth, 44 Pa. 297, the devise in chief was to A for his natural life, without power of sale, and at his death to his heirs as tenants in common.   The devise over was, ' should he die without issue,' then over.   The judgment was, that A took an estate tail.

"In Haldeman v. Haldeman, 40 Pa. 30, the devise in chief was, ' To A, B and C, (in trust) during their natural lives, and after the death of either of them, to descend and go to the child, and if children, share and share alike.'   The devise over, 'should, however, either of them die and leave no lawful issue, then such share to fall to the residue of the estate.'   The judgment was, that A, B and C took estates tail.

"In Ogden's App., 70 Pa. 501, the doctrine in Pennsylvania is very clearly stated by Justice AGNEW, in his opinion he says in speaking of the phrase : ' To her lawful issue.' (The words used in the devise in the present case.)

"It requires more than mere words of distribution to limit this prima facie effect of the phrase. The words in equal shares without something else to indicate the intention of the testator, will not reduce the inheritance to a mere life estate. Even the words as ' tenants in common,' will not of themselves limit the entail.

"In the case last reported, Hiester v. Yerger, 166 Pa. 445, April 12, 1895, Per Cur., the ' testatrix devised her real estate to her nephew, for and during the term of his natural life, upon conditions to keep the same in good repair and insured, and also pay all taxes thereon, during said term, and after his decease, whether before, or after my decease, I give and devise the said premises unto his then surviving heirs in fee simple.' Held, that the nephew took a fee simple estate in the land.

"This case, which is the latest utterance of the Supreme Court of Pennsylvania, on this question, was affirmed by the Supreme Court for the reason given by the learned judge of the common pleas (WEAND, J.), of Montgomery county, who held that, ' whether intentional, or otherwise, the testatrix has used words, which, under the uniform rulings of our court, confer an absolute estate in the first taker. The added words, " his surviving heirs," do not change the meaning to be given to the word " heir," and may be treated as superfluous, as was done in Criswell's App., 41 Pa. 288, where the devise was to testator's son, Joshua, during his natural life, and that of his present wife, etc.; " and it is further my will and desire, that after the decease of my son Joshua, and his present wife, that the said tract of land descend to their heirs, jointly, and their heirs and assigns forever, or to such of them as may be living." The court holding, that the addition by the testator of the words, " then living" to the word " heirs," was insufficient to cause the latter to give way; for superfluous or inconsistent words or doctrines in a will, will not suffice to reduce the word " heir," or " heirs of the body " to words of purchase.' To the same effect is the Appeal of Cockins and Harpers Exr.'s, 111 Pa. 26, where the devise was ' to my three nieces, share and share alike, during

their lives, and at their death to go to their heirs in " equal amounts " to all their heirs living at the time of their deaths,' and it was held that the devisees took under the rule in Shelley's case, the real estate in fee simple and the personal estate absolutely.

" It is well settled that a devise to the lawful issue of the first taker, is prima facie, a limitation to the heirs of the body of the devisee, and therefore vests a fee tail, which, under act of 1855 becomes a fee simple, and this is the case even where the devise to the first taker is expressly for life : Knepper v. Kurtz, 58 Pa. 481 ; Haldeman v. Haldeman, 40 Pa. 29 ; Physick's App., 50 Pa. 128 ; Nice's App., 50 Pa. 143.

" It remains yet to consider, whether the testator, in using the words ' to have and to hold the same in common to them, their heirs and assigns forever,' after the devise to Hester A. Grimes, and her lawful issue, meant to cut down her estate to a life estate, and the words, ' her lawful issue,' are therefore to be construed as words of puchase.

" Are these words, terms of distributive modification, and added words of limitation, so as to bring them within the meaning of the decisions in Findlay v. Biddle, 3 Binn. 139 ; Powell v. Board of Dom. Miss., 49 Pa. 46 ; Robins v. Quinliven, 79 Pa. 333 ; O'Rourke v. Sherwin, 156 Pa. 285 ?

" In Powell v. Board of Dom. Miss., 49 Pa. 46, STRONG, J., found it to be the intention of the testator to use a word of limitation in an abnormal sense as a word of purchase, but he found this, not in the naked terms with which we have to deal in the case under consideration, but in the fact that he had added these terms of distribution, ' if one, to him or her, his or her heirs and assigns forever ; but if more than one, to be equally divided amongst them, their heirs and assigns forever.'

" In Robins v. Quinliven, 79 Pa. 333, WILLIAMS, J. found the equal in the words of distributive modification, and limitation : ' In the proportions to which they would be entitled under the intestate laws of Pennsyleania, respectively, and free, clear and discharged from any estate, claim or control of her present or future husband.' It is conceded in the Quinliven case, that ' if the testator meant by the word " issue " the heirs of her body, then she took an estate in fee simple under the rule in Shelley's case.'

" In the present case could Francis Bright, the testator, have meant, or intended any other than the heirs of Hester A. Grimes' body ? He has used the precise words of limitation, 'her lawful issue,—to have and hold the same in common to them, their heirs and assigns forever.' Either in a will or devise, the words ' to A, her lawful issue, to have and to hold the same in common, to them their heirs and assigns forever,' would, in our judgment, be a complete and perfect grant and devise in fee simple ; and there is nothing, no evidence within the whole will, to show that the testator meant anything else.

" In Ogden's App., 70 Pa. 501 as we have seen, there is a very clear and learned discussion of this question by most competent counsel, and a learned opinion by the eminent late Chief Justice AGNEW. The principles of the decision are thus summarized in the syllabus: ' 5. A devise to the lawful issue of the first taker prima facie creates a fee tail; even where the devise to the first taker is for life.'

" ' 6. Words of distribution, or tenancy in common, without more will not reduce the inheritance to a life estate.'

" ' 7. The devise over in this case, to the brothers and sisters in default of issue, did not restrict the estate to one for life, the failure of issue being indefinite.'

" In this case it will be observed, the devise was to trustees, in special trust, for the sole use and benefit of the testator's three daughters, with testamentary powers to them, and in default of the exercise of such powers, to their lawful issue, and in default of such issue, ' then to her brothers and sisters, in equal shares, and to the lawful issue, if any there be, of my children who may then be deceased; such issue to take what their parent would have taken had he or she been living.'

" For the estate in fee simple it was argued that :

" The addition of the words ' in equal shares ' will not change this prima facie meaning, on the authority of Hayes on Real Est., table 1, p. 39; table 3, pp. 69 and 70; Doe v. Alphin, 4 Term Rep. 82; Doe v. Cooper, 1 East 229; Harrison v. Harrison, 7 Man. & G. (49 E. C. L. R.) 938.

" Superadded words of limitations alone will not make ' heirs of the body' words of purchase: Hawkins on Wills, 184; Jarman on Wills, 337 ; Jeason v. Wright, 1 Bligh. 1 ; Criswell's App., 41 Pa. 291; Paxson v. Lefferts, 3 Rawle, 59–75; George v.

Morgan, 16 Pa. 95. Nor will superadded words of distribution :
Moore v. Brooks, 12 Gratt. 135 ; Maurer v. Marshall, 16 Pa.
378 ; Hawkins on Wills, 190 ; Cannon v. Rucastle, 8 C. B. (65
E. C. L. R.) 876 ; Haldeman v. Haldeman, 40 Pa. 29.

" The conclusion arrived at by the court in this case was
that each of the daughters took an estate of inheritance in fee
tail, and with special force of application to the case now under
consideration. His Honor, Chief Justice AGNEW said :

" ' It requires more than mere words of distribution to limit
this prima facie effect of the phrase. The words " in equal
shares," without something else to indicate the intention of the
testator, will not reduce the inheritance to a mere life estate.
Even the words " as tenants in common " will not of themselves
limit the entail.'

" In Carroll v. Burns, 108 Pa. 386, it was again declared
that technical words, or words of a definite meaning in a will,
must be construed according to their legal or definite effect,
unless from other inconsistent words in the will, it be clear
that the testator intended to use them in some other definite
sense.

" In Allen v. Markle, 36 Pa. 117 (1859), ' Devise to my son
A. during his natural life, and at his decease, to descend to le-
gitimate offspring forever, but in case the said A.'s issue should
become extinct, then over the other devisees in fee.' *Held*,
that A. took an estate tail in the lands devised.

" In Yarnall's App., 70 Pa. 342, it is said, ' Any form of
words sufficient to show that the remainder is to go to those
whom the law points out as the general, or lineal heirs of the
first taker, will enlarge the estate for life of the first taker to
an estate tail by implication.'

" In Paxson v. Lefferts, 3 Rawle, 59 (1831], the devise was,
' I give to my son C. H. my Messuages, etc., with the rents,
issues to him during his natural life. And if he shall leave law-
ful issue, then to them, their heirs and assigns forever ; but for
want of such lawful issue, then, it shall return to my son, J. K. ;
and if he should leave no lawful issue after his decease, then,
to my next lawful heir, and to their heirs and assigns forever.'
*Held*, C. H. took an estate tail.

" In Carter v. McMichael, 10 S. & R. 429, the provisions of
the will were very similar.

"In George v. Morgan, 16 Pa. 95 [1851], the devise was, 'I give and bequeath unto my son M., all that Messuage, &c., to hold to him for and during his natural life, and after his decease to the heirs of his body, lawfully begotten, and to their heirs forever; and in default of such issue, then to the heirs of my son, S., and their heirs and assigns forever.' *Held,* that the devisee took an estate tail. And that:

"'4. Superadded words, serving to limit a fee in the issue of the first taker, engrafted on words of procreation, will not operate to turn these into words of purchase, unless the superadded words denote a different species of heirs from that described in the first words, and showing an intent to break the ordinary line of descent from the first taker.

"'5. An intention to change the line of descent is not sufficiently manifested when the superadded words import eventual distribution of the estate; to have that effect, distribution must be expressly contemplated.'

"In Hileman v. Bouslaugh, 13 Pa. 344, there was a conveyance of real estate to a married woman 'during her natural life, and after her decease to the heirs of her body, and to them and their heirs and assigns forever.' In the very learned opinion in that case, by Chief Justice GIBSON, in which there is found a discussion of the present subject, the limitation was declared to have no other effect on the life estate, than, in the absence of express words of appropriation, to turn it into an estate tail.

"In Little's App., 117 Pa. 14, the testator had provided, that four out of twenty equal parts, into which his estate was divided, should be distributed to 'J. R. M. and his heirs, four parts, that is, the four parts are to be paid to J. R. M. during his lifetime, and after his death, the same to be paid to his heirs,' that the shares of the several distributees were to be claimed by them within two years after his decease, or else to lapse into the general fund, with various other conditions. It was held that the gift to J. R. M. was a vested and absolute gift, unaffected by the postponement of payment, or by the use of the word 'heirs' by way of limitation and not of purchase; and unaffected by the provision, that if the shares of the distributees were not claimed within two years after the testator's decease, they were to lapse.

" An unbroken line of decisions in Pennsylvania, establishes that the word 'heirs,' when uncontrolled by the expressed intention of the will, is to be taken as a word of limitation. Among them: Muhlenberg's App., 103 Pa. 587; McGill's App., 61 Pa. 46; Provenchere's App., 67 Pa. 463; Eby's App., 84 Pa. 241, etc.

" In Cochran v. Cochran, 127 Pa. 486, the devise was, to T. 'and if he should die leaving no lawful heirs, the whole to descend to his brothers and sisters, share and share alike, or to their legal representatives.' Upon the principle, that where there is a devise in realty, the legal representative in legal contemplation is the heir, and not the administrator, it was held, that the testator meant to give nothing less than a freehold estate to T.; that no remainder was limited to his heirs as purchasers, and it was decided the estate devised to the defendant was, by reason of said devise and proceedings to bar entailment, an estate in fee simple.

" In O'Rourke v. Sherwin, 156 Pa. 285, where it was held that the word 'issue' meant 'children,' and that the devisees took life estates only, there were explanatory words which showed that the word 'issue' was intended to have a limited meaning, and to be applied only to children, or to descendants of a particular class, or at a particular time.

" There the devise was, ' To hold the same as tenants in common for and during their natural lives, and to the life of the survivor of them, with remainder in fee to the issue of them, said issue to take per stirpes, and not per capita; so that in case of the death of either of said three, leaving issue, the said issue would and shall take what their parent would have been entitled to, subject to the life estate of the survivor or survivors of said original, three devisees.' Testator also provided in this case for the support of his daughter, one of the three devisees, out of the land, and authorized the sale, if necessary, of one acre per year for that purpose.

" It is not very difficult to perceive how, with these words present, under the Findlay Case, 3 Binn, 139; Powell v. The Board of Dom. Miss., 49 Pa. 46 and Robins v. Quinliven, 79 Pa. 333, the court could find such limitation to the heirs general, and superadded words of distributive modification, as showed, that by 'issue' the testator meant 'children.' But no such

words are present—no such intention is apparent in the will of Francis Bright. In New York, the decision in Kingsland v. Rapelye is directly contrary to Hawkins' Rule in Lees v. Mosley, and in Doe v. Rucastle, 8 C. B. 876, (54 E. C. L. R.,) where the devise was of the lands to A for life, with the remainder to his 'issue,' if more than one, equally amongst them, with a gift over if A should die without issue living at his death, and A was held to take an estate tail.

"In Doebler's App., 64 Pa. 9–18, it is held that technical words are to be used according to their proper technical sense, unless the other parts of the will imperatively require otherwise, and particular intent must yield to a general intent, if both cannot stand together. The presumption that words of limitation in a will are used in their ordinary legal sense, is not to be overcome by other words, merely incongruous with such intention, and if an estate to heirs be given as an immediate remainder after the freehold, it vests as an executed estate of inheritance in the ancestor, and the testator cannot prevent this legal consequence by any declaration of a prior intention, however plain. The opinion in this case was delivered by Mr. Justice SHARSWOOD. The devise was to the son, with the reservation 'but he shall in nowise sell or alienate any of the property, as it is intended he shall have a life interest only in the same, with remainder over to his heirs in fee, and he shall in no wise come into possession until his twenty-second year.' The learned justice said, that, where the testator devised his mansion house and the adjoining lot to his son, the plaintiff, for life, with remainder over to his heirs in fee, 'it would require a very clear indication of an intention on his part to use the word "heirs" in some other than its well-ascertained legal sense to justify a court in departing from it.'

"From a review of the law, as stated in the foregoing decisions, and adhering to the ordinary rules of construction, we see no reason to doubt that the testator, Francis Bright, by the words 'lawful issue' meant the lineal descendants of his adopted daughter, Hester A. Grimes, and not her collateral heirs. The very terms of the will by which he provides, that in the event of failure of issue on her part, the remainder shall revert to his estate, indicates clearly, that by 'lawful issue,' he intended and meant, to preserve the estate in the first taker and her lawful

heirs. The words 'in common' are not such superadded words of limitation, or distributive modification, as will make the words 'lawful issue' words of purchase. And as we find nothing in the will of Francis Bright which indicates that the word 'heirs' is used by the testator in any other than its strictly technical sense, the estate must therefore be declared a fee simple in the plaintiff Hester Ann Grimes.

"And now, April 29, 1895, the court being of the opinion that under the will of Francis Bright, deceased, the estate devised to Hester Ann Grimes, in the property described in the case stated, is a fee simple, and that her conveyance of the same, joined in by her husband, will make a good and legal title to the fee in said property, do now enter judgment for the plaintiff, in the sum of fifteen hundred dollars, in accordance with the provisions of the case stated."

*Error assigned* was entry of judgment for plaintiff.

*A. B. Hassler, J. W. Brown* with him, for appellant, cited, On the meaning of the words "lawful issue:" Hawkins on Wills, 191; Findlay v. Riddle, 3 Binn. 139; Powell v. Board, of Dom. Miss., 49 Pa. 46; Robins v. Quinliven, 79 Pa. 333; O'Rourke v. Sherwin, 156 Pa. 285.

*W. U. Hensel, J. Hay Brown* and *Ermentrout & Ruhl* with him, for appellee, cited: Hoff's Est., 147 Pa. 636; Eichelberger v. Barnitz, 9 Watts, 447; Vaughan v. Dickens, 20 Pa. 509; Smith's App., 23 Pa. 9; 2 Jarman on Wills, 97; Hackney v. Tracy, 137 Pa. 53; Hiester v. Yarger, 166 Pa. 445; Armstrong v. Michener, 160 Pa. 21; Rancel v. Creswell, 30 Pa. 158; Taylor v. Taylor, 63 Pa. 481; Haldeman v. Haldeman, 40 Pa. 29; Physick's App., 50 Pa. 128; Nice's App., 50 Pa. 143; Findlay v. Biddle, 3 Binn. 139; Powell v. Board of Dom. Miss., 49 Pa. 46; Robins v. Quinliven, 79 Pa. 333; O'Rourke v. Sherwin, 156 Pa. 285; Hawkins on Wills (American ed. 1872), 193; Lees v. Mosely, L. Y. & C. 589; Paxson v. Lefferts, 3 Rawle, 59; George v. Morgan, 16 Pa. 95; Criswell's App., 41 Pa. 291; Maurer v. Marshall, 16 Pa. 377; Smith on Executory Interests, 475; Little's App., 117 Pa. 14; Cochran v. Cochran, 127 Pa. 486; Crockett v. Robinson, 46 N. H. 454; Clark v. Smith, 49

Md. 106; Cockins's App., 111 Pa. 26; Findlay v. Riddle, 3 Binn. 139; Allen v. Markle, 36 Pa. 117; Jesson v. Wright, 2 Bligh. 1.

PER CURIAM, May 30, 1895:

The question presented in this case was well considered and rightly disposed of by the court below. It is unnecessary to add anything to what has been said by the learned president of the common pleas in his able and exhaustive opinion sent up with the record. On that opinion we affirm the judgment.

Judgment affirmed.