## Harrison, Appellant, *v.* Harris.

*Wills—Construction—Fee simple—Life estate—Rule in Shelley's Case.*

1. When "heirs" is employed in connection with remaindermen, the rule in Shelley's Case applies, unless other language in the will clearly demonstrates that the word was not intended in its technical sense, as a term of limitation. The strong presumption arising from the use of technical words of limitation is not easily overcome; it may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt. If in a devise the word "heirs" has other words of inheritance engrafted upon it, unless the latter are entirely inconsistent with the nature of the descent pointed out by the former, they will not convert it into a word of purchase; for the word

"heirs" retains its significance, even though the effect be to make unmeaning other words in the will.

2. Testator devised to his wife all his property for life including certain real estate and then provided: "After the death of my said wife, I give, bequeath and devise to my son, John, and to the son of my wife, Mathew Harrison, the use and income of all my estate, real and personal, share and share alike, for and during the term of their natural lives. In case of the decease of one of said sons, the other shall have a life interest in one-half of my estate, and the remainder shall be appropriated as hereinafter provided. After the death of John and Mathew, I give, bequeath and devise the undivided one-half part of all my estate, real and personal, to the heirs of said John and the other one-half part of my estate unto the heirs of Mathew, to have and to hold the same to themselves, their heirs and assigns forever." Upon a case stated to determine the interest taken under the said devise by the son Mathew, *held* that under the rule in Shelley's Case he took a fee simple title in the undivided one-half interest in the real estate.

Argued April 15, 1914. Appeal, No. 116, Jan. T., 1914, by plaintiffs, from judgment of C. P. Luzerne Co., No. 470, Dec. T., 1913, on case stated in case of John Harrison, Elizabeth A. Burnett, Henrietta Fosenkrant, Jane Bechtold, James Harrison, and Elizabeth Harrison, Guardian ad litem of Edward Harrison, Anna Harrison, Mable Thomas Harrison, Lucy Harrison and Jessie Harrison, being all the heirs of Mathew Harrison, deceased, v. A. H. Harris. Before Fell, C. J., Mestrezat, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Case stated to determine the title to real estate. Before Woodward, J.

The opinion of the Supreme Court states the case.

The court entered judgment in favor of the defendant on the case stated. Plaintiffs appealed.

*Error assigned* was in entering judgment in favor of the defendant upon the case stated.

*W. Alfred Valentine,* with him *Charles E. Keck,* for appellants.

*W. L. Pace,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, May 18, 1914:

The question for determination in this case is: Did Mathew Harrison take an estate in fee-simple or but a life-estate?

The testator devised to his wife, who is now dead, all his property for life, including the real estate here in controversy; he then provided: "After the death of my said wife, I give, bequeath and devise to my son, John Green, and to the son of my wife, Mathew Harrison, the use and income of all my estate, real and personal, share and share alike, for and during the term of their natural lives. In case of the decease of one of said sons, the other shall have a life interest in one-half of my estate, and the remainder shall be appropriated as hereinafter provided. After the death of John Green and Mathew Harrison, I give, bequeath and devise the undivided one-half part of all my estate, real and personal, to the heirs of said John Green and the other one-half part of my estate unto the heirs of Mathew Harrison, to have and to hold the same to themselves, their heirs and assigns forever." John Green also is now deceased.

The issue arose in a case stated wherein it was agreed, —Should the court below decide that Mathew Harrison took "a fee-simple title to the undivided one-half interest. of the real estate.......then judgment to be entered for the defendant," otherwise, for the plaintiffs. It was determined that, under the rule in Shelley's Case, the will gave to Mathew Harrison a fee-simple estate; judgment was entered accordingly, and the plaintiffs have appealed.

In an effort to determine the testator's intent, "We are bound to take as our guides those general rules or canons of interpretation which have been adopted and followed by those who have gone before us......There are two such canons of construction, which have been so universally recognized as sound and just, that it would

be a mere affectation of learning to cite books in their support. The first is, that technical words shall be taken to have been used according to their proper technical sense, unless the other parts of the will imperatively require a different one......The second is, that a particular intent shall always give way to a general one if the two cannot consist together." (Doebler's App., 64 Pa. 9, 15.)

When "heirs" is employed in connection with remainderman, the rule in Shelley's Case applies, unless other language in the will clearly demonstrates that the word was not intended in its technical sense, as a term of limitation (see Stout v. Good, 245 Pa. 383, and other authorities there cited). "The strong presumption arising from the use of technical words of limitation is not easily overcome; it may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt"; Little's App., 117 Pa. 14, 29. If in a devise the word "heirs" has other words of inheritance engrafted upon it, unless the latter are entirely inconsistent with the nature of the descent pointed out by the former, they will not convert it into a word of purchase (George v. Morgan, 16 Pa. 95, 108) ; for the word "heirs" retains its significance, even though the effect be to make unmeaning other words in the will, thus, "words of superadded limitation alone are insufficient, as in the case of a gift to A for life remainder to the heirs of his body, and to their heirs forever." (Criswell's App., 41 Pa. 288, 291; also see cases cited in Grimes v. Shirk, 169 Pa. 74, 88). Here, the devise is to Mathew Harrison with remainder to his heirs, and "the round about way which the testator takes to say 'heirs' does not affect the substance" (McKee v. McKinley, 33 Pa. 92, 93).

It may be that the testator's particular intent was to give the first devisee not more than a life estate; but it is equally clear that his general intent was to constitute such devisee a source of inheritable succession; the lat-

ter, therefore, "took a fee under the unbending rule in Shelley's Case as applied in this State" (Lauer v. Hoffman, 241 Pa. 315, 317; Shapley v. Diehl, 203 Pa. 566, 569). We say that the intent to make the life tenant a source of inheritable succession is clear, because the technical words used demonstrate that design, and there is nothing within the four corners of the will sufficient to rebut it. There are no words of distributive modification; and under these circumstances "superadded words of limitation which import the same course of descent are inoperative." (Hileman v. Bouslaugh, 13 Pa. 344, 353). Finally, the fact that the testator uses the words "I give, bequeath and devise......to the heirs......of Mathew Harrison," instead of using an expression such as, "to pass to," or "to descend to" the heirs, etc., has no controlling effect; this is illustrated by Grimes v. Shirk, 169 Pa. 74, and many other cases which might be cited.

Kemp v. Reinhard, 228 Pa. 143, largely relied upon by the appellants, does not rule this case; there the technical word "heirs" was not used, and we found, from the four corners of the will, satisfactory proof of an unmistakable intent that the remaindermen were not to take qua heirs of the first devisee, but directly from the testatrix. The case which, on its facts, most nearly approaches this one is Grimes v. Shirk, supra, where the language employed in respect to the superadded words of limitation is strikingly similar to that used in the present devise; and it was there held that the first devisee took an estate in fee.

The assignments of error are overruled and the judgment is affirmed.