## Johnson's Estate.

*Thomas & Thomas*, for petitioner; *Walter J. McClintock*, for respondents.

KENT, P. J., August 4, 1930.—This is a proceeding under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, brought by Frank Stewart, grantee in a deed of general warranty from Frank E. Johnson and wife, dated November 30, 1920, to determine what interest, estate or title said Frank E. Johnson acquired under the last will and testament of William F. Johnson, his deceased father, in and to a certain farm of 125 acres, situate in South Shenango Township, Crawford County, Pennsylvania, particularly bounded and described as follows: "On the north by land of Bert Carkhuff and McArthur heirs; on the east by land of Minnie White; on the south by land of Nannie Johnson and Wm. F. Johnson heirs; and on the west by land of Wm. White and Olive Kuder."

All parties interested in said real estate and in the construction of the will of William F. Johnson, in this adjudication to determine their rights, status

and legal relations with reference thereto, have been made parties to this proceeding.

This proceeding to have a declaration of rights, status and other legal relations of the parties interested, all of whom are subject to the jurisdiction of the court, as the record now stands, seems to be proper, and the remedy sought under this act is probably the most convenient and satisfactory one that exists at the present for determining the matter in controversy. Any other action would undoubtedly turn upon the construction of the will to be construed by the court under the submission in this proceeding. Wherefore, the court is of the opinion that the Uniform Declaratory Judgments Act can be made of real use herein and is satisfied that it has jurisdiction and that an actual controversy exists between the parties, all of whom are *sui juris* or represented by a proper guardian and now before the court, and that the declaration herein sought will be a practical help in the ending of the controversy: Kariher's Petition, 284 Pa. 455; Lyman *v.* Lyman et al., 293 Pa. 490.

A careful perusal of the petition and answer clearly discloses that there is little or no controversy between the parties relative to existing facts; generally, the pertinent facts necessary to a proper adjudication appear by the petition and answer, and there is no request and apparently no necessity for trying any issue of fact by a jury. The sole question involved is: Did Frank E. Johnson under the terms and conditions of the last will and testament of his father, William F. Johnson, deceased, take an estate in fee simple in the lands devised to him, as above described, or did he take but a life estate therein?

Disposition of the question involves and requires an interpretation of the last will and testament of William F. Johnson, deceased. Petitioner contends that by reason of the language used therein the Rule in Shelley's Case is applicable, and by reason thereof the life estate granted therein is converted into an estate-tail, which, under the provisions of the Act of April 27, 1855, P. L. 368, as amended by the Wills Act of June 7, 1917, P. L. 403, is converted into an estate in fee simple; the respondents contend that the Rule in Shelley's Case does not apply and that the devisee took but a life estate under the will of his father.

The pertinent and material facts, as we view them, established in this proceeding are: William F. Johnson, being seized of certain real estate situate in Crawford County, Pennsylvania, died testate December 16, 1897, his last will and testament bearing date of May 23, 1895, being duly probated and registered in Crawford County, Pennsylvania, December 30, 1897, in Will Book "I," at page ninety-one, wherein Frank E. Johnson, a son, was devised the 125 acres of land hereinbefore mentioned and described upon certain stipulations and conditions; at the time of the execution and registering of said will, the said Frank E. Johnson was under the age of twenty-one years, he having been born July 16, 1877; upon his arriving at the age of twenty-one years, in July, 1898, he entered into possession of the above-mentioned and described lands, remaining in full and undisputed possession thereof until November 30, 1920, at which time he, together with his wife, Mary Johnson, by deed of general warranty, conveyed said lands to petitioner herein for an actual consideration of $3500; said deed being duly recorded in the Recorder's Office of Crawford County, Pennsylvania, in Deed Book 221, at page 339; during the period the said Frank E. Johnson was in possession of said lands, he believed, understood and was advised that he was the owner thereof in fee, and that during the said period, on some two or more occasions, mortgaged said property, and it was not until some time after the conveyance hereinbefore mentioned to Frank Stewart that he learned there was any question relative to his

title in fee simple to the land in question; this proceeding being instituted to secure a judicial determination of the question as to whether a title in fee simple became vested in Frank E. Johnson by virtue of the last will and testament of William F. Johnson, deceased.

The determination of this question involves an interpretation of the will mentioned as to testator's intention relative to the devise to his son, Frank E. Johnson, as stated and set forth in three provisions of the said will, which are as follows:

"To my son, Frank E. I give the use of one hundred twenty-five acres off the north side of the farm on which I live during his life. . . .

"The farm herein devised to my son Frank, is not to come unto his possession until he shall have arrived at the age of twenty-one years, in the meantime to remain under the control of my executor. It is my desire and I hereby direct that should any of my children, Frank, Howe, Arthur, Jacob, Minnie, Alta or Maud die leaving no issue, the share of such one shall go to the others who survive, but should any of them die leaving issue the said share shall go to the said issue and assigns forever. . . .

"Upon the death of any of my children to whom I have given the use of real estate, the same shall be used by them respectively during their lifetime, and then to go to their children, heirs and assigns forever."

It will be observed that the testator, William F. Johnson, in the first provision, devised to his son, Frank E. Johnson, but a life use or estate in the 125 acres off the north side of the farm upon which testator lived. If there were no further conditions and qualifications contained in the will, we are clearly of the opinion that Frank E. Johnson's interest would be limited to a life estate; but when testator says "the farm herein devised to my son Frank, is not to come unto his possession until he shall have arrived at the age of twenty-one years, in the meantime to remain under the control of my executor," this, in our opinion, imposes such a condition as might result in intestacy, in so far as the land mentioned is concerned.

Suppose Frank E. Johnson had died before arriving at the age of twenty-one years and entering into possession of the land. The same, remaining under the control of decedent's executor, in our opinion, upon such a happening would descend, under the intestate laws, to the other heirs of the testator. The remaining two provisions provide for a distribution of the land in the event that Frank E. should die leaving no issue, as well as the disposition of said land if he should die leaving issue. It will be noted that in these two provisions testator, in the second, used the words "issue" and "assigns," and in the third the word "issue" is omitted and the words "children, heirs and assigns" are used. What was the testator's intent? This we are to determine, not alone from the particular words used, but as well from the connection in which they are used and from the entire will. In other words, the intention of the testator is to be drawn from the four corners of the will.

Carefully considering the whole will, we strongly incline to the belief that it was the testator's intent to devise and divide his estate to and among his heirs in as nearly equal proportions as possible. The language used in nearly every instance where real estate is involved creates but a life use or estate, and it seems very clear to us that the provisions written into the will wherein the words "issue, children, heirs and assigns" are used were advisedly and purposely used to establish a line of inheritable succession for descent upon the death of each life tenant; testator making it plain that he intended the first devisee, named as a life tenant, to be a source of inheritable succession,

and he treated the words "issue, children, heirs and assigns," as far as expressing his purpose, as words of limitation and not purchase.

In the instant case, the testator gave to his son, Frank E. Johnson, the use of the 125 acres off the north side of his farm during his life, providing that possession thereof be not delivered to him until he arrived at the age of twenty-one, and that upon his death, leaving issue, children and heirs, the fee was then to go to his children, heirs and assigns. The question for us is the sense in which the words were used in this instrument; that is, what was the intent of the testator in the use of the words "issue, children, heirs and assigns."

We think the context shows that the word "children" was intended to be qualified or explained by the word "heirs" which immediately follows it and that the testator intended to use the word "children" in its comprehensive and extended sense, meaning issue or heirs of the body. It is apparent that the word "children" was not used as a word of purchase, for it was so combined with other words as to indicate an intention to include all the lineal descendants of the first taker.

"Where the word 'heirs' is coupled with the word 'children' it is fair to presume that the testator intended to have the one word qualify or explain the other, and create an estate tail:" Kirby's Estate, 235 Pa. 542; Asper v. Stewart, 246 Pa. 251.

"When 'heirs' is employed in connection with remainderman, the rule in Shelley's Case applies, unless other language in the will clearly demonstrates that the word was not intended in its technical sense, as a term of limitation (See Stout v. Good, 245 Pa. 383, and other authorities there cited). 'The strong presumption arising from the use of technical words of limitation is not easily overcome; it may be rebutted, but it can be by nothing short of affirmative evidence of a contrary intent, so clear as to leave no reasonable doubt:' Little's Appeal, 117 Pa. 14, 29. If in a devise the word 'heirs' has other words of inheritance engrafted upon it, unless the latter are entirely inconsistent with the nature of the descent pointed out by the former, they will not convert it into a word of purchase (George v. Morgan, 16 Pa. 95, 108); for the word 'heirs' retains its significance, even though the effect be to make unmeaning other words in the will, thus, 'words of superadded limitation alone are insufficient, as in the case of a gift to A for life, remainder to the heirs of his body, and to their heirs forever.' (Criswell's Appeal, 41 Pa. 288, 291; also see cases cited in Grimes v. Shirk, 169 Pa. 74, 88.) Here, the devise is to Mathew Harrison with remainder to his heirs, and 'the roundabout way which the testator takes to say "heirs" does not affect the substance:' McKee v. McKinley, 33 Pa. 92, 93.

"It may be that the testator's particular intent was to give the first devisee not more than a life estate; but it is equally clear that his general intent was to constitute such devisee a source of inheritable succession; the latter, therefore, 'took a fee under the unbending rule in Shelley's Case as applied in this State' (Lauer v. Hoffman, 241 Pa. 315, 317; Shapley v. Diehl, 203 Pa. 566, 569). We say that the intent to make the life tenant a source of inheritable succession is clear, because the technical words used demonstrate that design, and there is nothing within the four corners of the will sufficient to rebut it. There are no words of distributive modification; and under these circumstances 'superadded words of limitation which import the same course of descent are inoperative:' " Harrison v. Harris, 245 Pa. 397.

"Prima facie, 'children' is a word of purchase, and not of limitation, and uncontrolled by the context, must be so construed, but where it is clear that it

is used in the sense of 'heirs' or 'heirs of the body' it must be so construed, and the intent of the testator be permitted to prevail.

"Testator devised certain real estate to his daughter Mary 'and her children, heirs, executors, administrators and assigns, to her and their use and benefit forever, excepting thereof only the one-third of the income for the use of my widow during her lifetime as before mentioned.' Held, that the daughter took an estate tail in the real estate which was enlarged to a fee simple under the Act of April 27, 1855, P. L. 368:" Asper v. Stewart, supra.

"It is well established in Pennsylvania that, 'When a life estate is devised to a person, and in the same will an estate is limited "mediately or immediately to his heirs in fee or in tail, . . . 'the heirs' are words of limitation, not of purchase," and the devise to the first taker is enlarged to a fee.' . . . Before a 'devise to one and his heirs' is removed from the rule in Shelley's Case, on the ground that the heirs take directly from testator, they must take independently of the fact that they are heirs of the person named as life tenant; that is to say, it must affirmatively appear that the word 'heirs' was used simply as a convenient way of designating testator's ultimate devisees, and it must not appear, as here, that he treated the first devisee as a source of inheritable succession: Shapley v. Diehl, 203 Pa. 566." Lyman v. Lyman et al., 293 Pa. 490, 492, 495.

"In determining whether the rule in Shelley's Case is applicable the test is how the donees in remainder are to take. If as purchasers under the donor then the particular estate is limited by the literal words of the deed and the rule in Shelley's Case has no application. But if the remainder-men are to take as heirs to the donee of the particular estate, then what has been called the superior intent as declared in Shelley's Case operates and the first donee takes a fee, whatever words may be used in describing the estate given to him. 'The inheritance in remainder must be given to the heirs of the grantee of the estate for life, as heirs, or the rule has no applicability to the case. . . . It is always therefore, a precedent question in any case to which it is supposed the rule is applicable whether the limitation of the remainder is made to the heirs in fee or in tail as such, and in solving this question the rule itself renders no assistance. It is silent until the intention of the grantor is ascertained.' "

"A grant to a son 'for the term of his natural life and at his death to his children or heirs,' vests in the son a fee under the rule in Shelley's Case.

"The rule in Shelley's Case is a rule of law, not a rule of construction and where a case falls within it, it applies inexorably without reference to intent:" Shapley v. Diehl, 203 Pa. 566.

In the instant case, testator, in the second provision hereinbefore mentioned, provides that should any of his children, naming them, die without issue, the share of such one shall go to the others who survive, but should any of them die leaving issue, the said share shall go to the said issue and assigns forever; and in the third provision, he omits the word "issue" and provides that upon the death of any of his children to whom he has given the use of real estate, the same shall be used by them respectively during their lifetime and then go to their children, heirs and assigns forever.

Similar usage of the words "issue, children, heirs and assigns" seems to have been construed and interpreted by the courts of this state. In the case of Haldeman v. Haldeman, 40 Pa. 29, a case in which the facts are very similar to those of the instant case, the following provision was submitted for interpretation: "The residue of my estate, real, personal, and mixed (being much the largest portion), I devise, leave, and will to all my children, share and share alike, with this reservation in regard to my three daughters, Sarah,

Mary, and Susan, I will, direct, and charge my executors or the survivors of them, to account for and pay over half-yearly to Sarah, Mary, and Susan, and to each of them, during their natural lives, the income or profit arising out of each of their share of the residue, and after the death of either, then to descend and go to the child, and, if children, share and share alike. Should, however, either of my daughters, Sarah, Mary, or Susan, die, and leave no lawful issue, then such share or portion is to fall back again to the residue and form a part of the same."

Justice Strong, in his opinion, interpreting this provision of the will, says:

"By the clause in his will devising the residue of his estate, the testator gave to his sons a fee simple. But it is clear that he did not intend to place his daughters precisely upon the same footing. True, there are general words of devise to all his children. They are coupled, however, with a reservation as to the shares of the daughters. The rents, issues and profits of each of those shares are given to the daughter for her natural life, and after her death, the share is required to descend to her child, and if children, to them share and share alike. The will then directs that if either of the daughters should die and leave no lawful issue, the property shall fall back into the residue of the estate. The beneficial interest is thus limited to each daughter for her natural life. It is not, as was supposed in the court below, the case of a gift in fee, with a subsequent attempt to take away some of the qualities of a fee, or to direct the manner of its enjoyment. This will, like all others, must be construed, with every part of it in view, and so as to give effect to the testator's whole intention, unless it be in part contrary to law, or impossible. The construction given by the court below ignores no inconsiderable portion of the testator's language. Although it is true that a testator, after having given a fee simple, cannot denude it of its nature and properties; in other words, cannot make a fee something else than that which the law recognizes as such, yet he may devise a less estate.

"He may restrain the generality of a devise, by subsequent expressions, and convert that which otherwise would have been a fee simple into an inferior interest; and more frequently in this mode than in any other is a particular estate given. A reduction of the quantum of the gift is allowable, while all attempted alterations of its qualities must prove inoperative. Even the Act of Assembly which enacted that all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or perpetuity, recognizes the power of a testator to restrict the generality of his gift, for it adds, 'unless it appears by a devise over, or by words of limitation, or otherwise in the will, that the testator intended to devise a less estate.' Here, there is not only an express limitation of the duration of the estate to the natural life of the daughters, but a remainder over, immediately after the decease of each daughter to her child or children, with a direction that on the death of such daughter without leaving lawful issue, the property devised shall fall back to the residue of the testator's estate, and form part of the same. In other words, the will directs that the devise shall lapse in case the daughter shall die without leaving lawful issue.
. . . .

"The devise was to each of the daughters for life, with remainder to the child or children of the first taker, share and share alike, but without any superadded words of limitation. The words 'child or children' by which the remainder-men were described, are, in their usual sense, words of purchase, and are always so regarded unless the testator has unmistakably used them as descriptive of the extent of the estate given, and not to designate the

donees. But they may be used as words of limitation. Mr. Hayes, in his Elementary Essay (page 35), asserts that the rules of construction freely permit the use of the words 'heirs of the body,' or 'issue,' in the limited sense of 'children,' in the comprehensive sense of 'heirs of the body;' those rules, or rather, the fundamental principle of legal interpretation requiring only a clear explanation to justify a departure from the ordinary meaning, imposing on those who would translate the term, the *onus* of producing an express warrant under the hand of the author of the gift. Wherever, therefore, in the devise of a remainder to the 'child' or 'children' of the first taker, it is thus made clearly to appear that those words are used in the sense of 'issue,' or 'heirs of the body;' they are to be treated as describing lineal succession to an entail. Cases are numerous of devises to one for life, or for life only, with remainder to his 'son,' or 'first son,' or 'eldest son,' in the singular number (all properly words of purchase), with a devise over in default of issue of the first taker, in which he has been held to take an estate tail, in order to let in other sons, who, without such a construction, would have been excluded. . . .

"Now, if this will be examined, it seems quite plain that the testator employed the words 'child,' 'children,' and 'issue,' indiscriminately, and all of them as meaning an entire line of lineal descent. He devised to each of his daughters for life, remainder to *descend* to the child or children, and the gift to lapse if the daughter should die and *leave no lawful issue*. The intent that the devise shall not lapse while lawful issue of the daughter remains, is evident. It is also evident that the point of time when the testator intended the estate given to the daughter and to her child or children to cease, and when the property was intended to fall into the residue of his estate, is the same. The termination of the estate and the lapse, were in his mind contemporaneous. Here he uses the words child, children, and issue, as meaning the same thing. And we think he used them all as meaning 'heirs of the body,' and not as descriptive merely of individuals. . . .

"Here is no devise over after the land '*descends*' to the child or children. The phrase, 'should, however, either of my daughters, Sarah, Mary, or Susan, die, and leave no lawful issue,' is not introductory to any ulterior devise. Manifestly, the only purpose of the testator, expressed in the sentence containing it, was to declare anew the duration of the interest he had previously given. In doing so, he has defined the sense in which he had used the words child and children, and shows an intent to express hereditable succession. For if in this will, the word 'issue' means 'child' or 'children,' instead of those words meaning 'issue' in the sense of 'heirs of the body,' the devise must lapse on the death of any of the daughters without leaving a child, though she should leave a grandchild. This was not clearly the testator's intention. The true construction of the will then is, that it devises to the daughters for life, with remainder to their issue, and in default of issue the gift is to lapse. This is only because the testator has defined the word child as meaning issue. The devise is then an estate tail, which, under our Act of 1855, is to be construed as a fee simple. We do not think that any such trust was created by the will as to prevent the operation of the rule that an estate for life with a remainder to the issue of the first devisee, is an estate tail in law."

In Vilsack's Estate, 207 Pa. 611, the following provision from the will of George Vilsack, deceased, was interpreted:

"I give and bequeath to my beloved wife, Katherine, all my real and personal estate during her natural life, and at her death, I give the proceeds or interests thereon to my sons, George and Siebol, and my daughters, Elizabeth and Catherine, during their natural lives, share and share alike, and after the

death of either of the above named sons or daughters I give and bequeath to their child or children (should they leave any children at their death) the share held by my sons and daughters at the time of his or her death, but should neither of my sons or daughters leave no heirs, then their share is to be divided between all of my grandchildren share and share alike."

"The question raised by the petition and answer is whether the children of testator take an estate in fee. After the death of his wife he gave his estate to his sons and daughters during their natural lives, and after their death to their children, should they leave any. Had he stopped here, there could be no question that the word 'children' was used in its ordinary sense as a word of purchase, and that his sons and daughters only took a life estate; but if any of them left no children, there would be intestacy as to this share. This, however, does not seem to have been his intention, as he next provided that if any of his sons or daughters left no heirs, their share was to be divided share and share alike between all of his grandchildren. If the word 'heirs' here means children alone, and a son or daughter died, leaving no children, but grandchildren, such grandchildren, being the great-grandchildren of the testator, would be disinherited, as grandchildren do not take under a devise to children. . . . In doubtful cases such a construction should be adopted as would distribute the estate as nearly as possible according to the intestate laws, the word 'heirs' we think therefore should not be construed as synonymous with 'children.' That it was not used in its general sense is evident from the fact that the limitation over is to testator's grandchildren, who would be the collateral heirs of a deceased grandchild not leaving lineal heirs. It seems then that the testator intended here to limit the estate given to his children to their lineal heirs, or issue, which shows also his intention to use the word 'children' in its comprehensive and extended sense, meaning issue or heirs of the body. If this construction be correct the gift then is to his children for life with remainder to the heirs of their bodies or their issue, which vested in the children a fee tail, enlarged by the act of assembly into a fee simple."

"A devise of realty to one for life with the right to the proceeds, without the right of alienation, and after his death to 'his children or legal heirs,' vests in the first taker an estate tail, which under the Pennsylvania statute becomes an estate in fee simple:" Sheeley v. Neidhammer, 182 Pa. 163; Lauer v. Hoffman, 241 Pa. 315.

Analyzing and construing the provisions of the testator's will in this case in the light of the authorities cited, it seems that the testator intended here to limit the estate given to his children to their lineal heirs or issue, which shows also his intention to use the word "children" in its comprehensive and extended sense, meaning issue or heirs of the body.

If our construction be correct, the gift, then, is to Frank E. Johnson for life, with remainder to his issue, children (the heirs of his body) and assigns forever, which vested in the children a fee tail, enlarged by the act of assembly into a fee simple in the first donee, Frank E. Johnson.

### Adjudication.

Now, August 4, 1930, the court finds as follows:

1. That Frank E. Johnson, under the last will and testament of his father, William F. Johnson, deceased, became vested with a fee simple title to the lands devised him in said will, and which said lands are fully and completely described in the petition filed in this proceeding.

2. That by deed of general warranty made, executed and delivered by Frank E. Johnson and wife to Frank Stewart, a fee simple title to said lands

was conveyed to the said grantee, and that a fee simple title to said described lands is now vested in petitioner, Frank Stewart.

3. That the decree of the Orphans' Court of Crawford County appointing a trustee under said will of William F. Johnson, deceased, and authorizing said trustee to deliver a deed for said described lands upon payment to it of the purchase money, is unnecessary and superfluous, and the said decree and appointment is hereby vacated and set aside.

4. That the costs of these proceedings be paid by petitioner.

From J. Perry Eckels, Meadville, Pa.