# Reifsnyder *versus* Hunter.

A testator devised as follows: "I do give and bequeath unto my son John, and to his heirs, the farm or tract of land on which he lives, which I value at $800, with this proviso: that my son John shall not have any right nor power to sell nor convey the said farm to any person or persons whomsoever, but at his death all the rights, title, and interest shall be and remain full and perfect in his lawful heirs." *Held*, that John the devisee took an estate *in fee* in the land devised.

ERROR to the Common Pleas of *Perry county*.
Ejectment by John Reifsnyder v. James Hunter, for a tract of

[Reifsnyder *v.* Hunter.]

land.  The result depended on the interpretation of a devise in the will of James Hunter; viz., whether John Hunter tóok an estate in fee in the premises in dispute, or a life estate.

A special verdict was rendered in the case.

The material facts were as follows:

James Hunter died seised of the land in dispute, having first ·made his last will and testament, dated 15th April, 1835, and which was duly proved on the 14th of November, 1835, by which he devised the land in controversy, as follows:—"I do give and bequeath unto my son John, and to his heirs, the farm or tract of land on which he lives, which I value at $800, with this proviso: that my son John shall not have any right nor power to sell nor convey the said farm to any person or persons, whomsoever, but at his death all the rights, title, and interest, shall be and remain full and perfect in his lawful heirs."  (The whole of which said will shall be considered as part of this verdict, as if herein fully set forth.)  John Hunter was married in 1812, and had issue nine children.  Upon the death of the testator, his son John entered into possession of the land, and enjoyed it until his death, which happened on the 15th of July, 1848.  He died intestate, and indebted to an amount exceeding his personal estate Upon the application of the administrator of his estate, the Orphans' Court of Perry county, on the 7th of August, 1850, ordered a sale of the said land for the payment of debts; in pursuance of which, the administrator, on the 26th of October, 1850, sold the same for the sum of $1500, which sale was confirmed by the Court, and a deed of conveyance of the land was made to the purchaser.  John Reifsnyder was plaintiff, and the children of John Hunter, before named, were the defendants in the suit.

The question was whether the said John Hunter took an estate in fee, or for life only, under the will of his father, James Hunter.

If upon the facts the Court were of opinion that the plaintiff was entitled to recover, then judgment to be entered for him, otherwise for the defendants.

GRAHAM, J., in his opinion, referred to various authorities to the effect that the word *heirs*, in a will, may mean *children*, and will be so construed by the Court when it is necessary to carry out the intention of the testator: 4 *Pickering* 208, Brown *v.* Porter; 5 *Barr* 464, Eby *v.* Eby; 10 *Barr* 498, Johnson *v.* Currin. He further observed: That the testator did not use the word "heirs," in the devise to John, for the purpose of vesting a fee simple in the devisee, is very apparent from the next clause in his will, where his manifest intention is to give to his son James, an estate in fee simple, and to effect this he uses the following language:— "I do give and bequeath to my son James, the farm on which he now lives" If testator used the word "heirs" to vest a fee sim-

[Reifsnyder v. Hunter.]

ple in John, why did he not use the same word in the next sentence, to vest a similar estate in James? The use of the word "heirs," in the devise to John, to which the proviso is added, intended to limit the estate granted to less than a fee simple, and its omission in the devise to James, where a fee is intended to be granted, shows the meaning attached by testator to the word " heirs," and that he used it synonymously with children, introducing it in the devise to John, in connection with the proviso, to give the devisee but a life estate, while it is intentionally rejected in the devise to James, to vest in him an absolute fee.

Again, in the next clause, by which testator confirms to his son Robert a farm personally conveyed to him, by deed, subject to the payment of four hundred dollars, the word "heirs" does not occur, although the intent and effect of the language used is to give Robert a fee simple.

In conclusion, after testator had disposed of his whole estate to his children and grandchildren, he directs his executors to "pay over the usual legacies, stated in this my will, to the several *heirs* as mentioned," thus designating his children and grandchildren, the objects of his bounty, by the word "heirs."

From an examination of the whole will, we cannot avoid the conclusion, that the testator by the word "heirs," when it occurs in his will, intended his children and his grandchildren. That he used the term in its popular, and not in its technical and legal sense. If, therefore, we substitute "children" for "heirs" in the devise to John, it gives him an estate for life, with remainder in fee to his children, and thus harmonizes the first clause with the proviso annexed, and gives effect to the intention of the testator by preserving the fee simple for the children of John.

Judgment for defendants.

Error was assigned to the entry of judgment for the defendants.

*Watts*, with whom was *McIntyre*, for plaintiff in error.—When a testator uses terms having a legal signification, it should be presumed that he knew their legal meaning, and they should have a legal interpretation: 2 *Powell on Devises* 2–3. A devise in fee without the power of alienation, is a contradiction in terms, and the qualification is inoperative: 1 *Bos. & Pul.* 192; *Preston on Estates* 264; 10 *Johnson* 19, Jackson v. Bull; 15 *Id.* 191, Jackson v. Robin.

There is nothing in the will to indicate the intention of the testator to give to his son John less than a fee, but on the contrary all else in the will shows clearly his design to equalize his children. This farm he gives to John at the value of $800, and adds $200, making it $1000.

By the next clause in his will he gives to his son James another farm valued at $800, and adds $200, making $1000.

By the next clause he gives to his son Robert a farm valued at $1400, directing him to pay $400, making his share $1000. These were his three eldest children, whom the testator manifestly intended should share his bounty equally.

*Hepburn*, for defendants.—In the use of the word *heirs* in a will, it may be a proper inquiry whether the word was used in its strict legal sense, or in any other; and if it were used in its popular sense, that sense should be sustained: 2 *Wm. Blackstone* 1010; 1 *Broom's Legal Maxims* 154; 7 *Scott's N. R.* 60–61; 5 *B. & C.* 48; 3 *Peters* 346. In this case the testator has not stopped with the qualification or limitation, but he devised the land to John's children. In the use of the term *heirs* he meant children, viz. the children of John: 17 *Ser. & R.* 441, Caskey *v.* Brewer.

*Watts*, in reply.—The devise to the *heirs* of John was merely a consequence of what would have been the case if the devise to · John was in fee.

The opinion of the Court was delivered by

GIBSON, J.—"I do give and bequeath to my son John and his heirs," are the words of the first clause of this devise. No one could limit a fee simple more artistically and precisely. "With this proviso," he continues, "that my son John shall not have any right nor power to sell nor convey the said farm," an impotent attempt to give title to property without the incidents of ownership. Again: "But at his death, all the right, title, and interest shall be and remain perfect in his lawful heirs." That expresses, in other words, what he had expressed before, and signifies no more than his notion of the intended disability. But whatever his plan, he has used technical words without anything to qualify their meaning, except ignorance of his inability to prescribe an impossible condition; from which it would be unsafe to infer that he stumbled on them by chance, or to mould the fee so as to give effect to a conjectural intention.

Judgment below reversed, and judgment for plaintiff in error.