## Urich's Appeal.    Stoudt's Estate.

1. Although a fee is given in the first part of a will, it may be restrained by subsequent words so as to convert it into a life-estate.

2. Urich *v.* Merkel, 2 W. N. C. 550, affirmed.

March 8th 1878.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ.   WOODWARD, J., absent.

Appeal from the Orphans' Court of *Berks county :* Of January Term 1877, No. 10.

This appeal was taken by Matilda Urich and her husband from the decree of the court dismissing their petition to be made parties to proceedings for the partition of certain real estate, wherein the petitioners claimed dower in the right of the said Matilda Urich. The latter was the widow of John Stoudt, whose father, Jacob Stoudt, died in 1853, leaving a will which contained, among others, the following provisions :—

"I give and bequeath unto my son, John Stoudt, and to his heirs, all my large farm where I now live, situate * * * containing three hundred acres, more or less, together with all the buildings and improvements and grain seeded out, and grass and hay and straw and manure, and all timber and posts and rails, together with all the farming stock and utensils belong to the farm, unto the said John Stoudt and to his heirs.

"Item. I give and bequeath unto my daughter Catharine, wife of Daniel Reeser, and unto her heirs, all that certain farm or tract of land situate * * * containing about two hundred and ten acres, more or less, together with all grain seeded out on the premises, and with all buildings and improvements ; further I give and bequeath unto my aforesaid daughter Catharine and to her heirs, a certain tract of land situate * * * containing fifteen acres, twelve perches, more or less, out of which two aforesaid described tracts of land, I order that the sum of four thousand three hundred and fifty dollars be paid out in one year after my decease, as I shall hereinafter direct by my said daughter Catharine, wife of Daniel Reeser, unto her other sisters, namely, Sarah, Polly and Harriet, in such sums as stated—(all grass, hay and straw is to go with and belong to the aforesaid land.)

"Item. I give and bequeath unto my daughter, Sarah Stoudt, and to her heirs, all that certain farm and tract of land situate * * * containing in the whole about one hundred and thirty-seven acres

of land, together with all the grain seeded out, and all hay, straw and manure, and with all buildings and improvements, and timber, wood and posts, and rails on the premises.

"Item. I give and bequeath unto my daughter Polly, wife of John Zacharias, and to her heirs, a certain farm and tract of land situate * * * containing one hundred and ten acres and one hundred and forty perches, more or less, with all buildings, improvements, and grain seeded out, and with all wood, timber, rails and posts on the premises. Also, I bequeath unto my said daughter Polly, and to her heirs, a certain tract of woodland, situate * * *.

"Item. I give and bequeath unto my daughter, Harriet Stoudt and to her heirs, a certain farm and tract of land, situate * * * containing one hundred and eighteen acres, more or less, together with all the buildings and improvements, and grain seeded out, and all hay, straw and manure on the premises, with all timber, posts and rails.

"Item. I order and direct, that my daughter Catharine, wife of Daniel Reeser, shall pay out, in one year after my decease, out of her farm and land aforesaid, the sum of nine hundred and fifty dollars unto my daughter Sarah Stoudt.

"Item. I order and direct, that my daughter Catharine, wife of Daniel Reeser, shall pay out unto my daughter Polly, wife of John Zacharias, Jr., in one year after my decease, out of the farm of said Catharine, the sum of twenty-four hundred and fifty dollars.

"Item. I order and direct, that my daughter Catharine, wife of Daniel Reeser, shall pay out, in one year after my decease, out of her farm and land aforesaid, the sum of nine hundred and fifty dollars unto my daughter Harriet Stoudt.

"Item. I give and bequeath the sum of nine hundred and nine dollars unto my daughter Polly, wife of John Zacharias, to be paid out unto her in one year after my decease, by my executors hereinafter named, out of my personal property, so as to enable her, my said daughter, to settle for the dower and lien, which is on the tract of land bequeathed unto her.

"Item. I herewith make known and declare it as my will that none of my aforesaid children shall have a right to sell or assign their land or property to them bequeathed as aforesaid, neither shall they have a right to encumber it with debts or liens, but the lands shall remain free for their children or heirs, and they, my said children, shall have the use, income and profit of the said lands and farms during their lifetime."

"Item. It is my will and do direct, that all my personal property, consisting of bonds and notes, book account and stocks, and whatever kind of personal property I may own at the time of my decease, shall be equally divided among all my children, to wit: John, Catharine, Sarah, Polly and Harriet, first having paid out unto my said daughter Polly aforesaid, the sum of nine hundred and nine

dollars—and also the further sum of one thousand dollars to be paid out unto my daughter Sarah, for extra services to me rendered —and besides I wish my executors to settle off all my just debts and funeral expenses out of the aforesaid personal property before an equal distribution takes place.

"Item. Whereas, I have ordained in this, my will, that none of my children shall have a right to sell nor encumber nor involve any of the real estate to them bequeathed, but I do hereby give either of my aforesaid children power, authority and the right to make a will and testament to take effect after their decease, so that either of them, to wit: John, Catharine, Sarah, Polly and Harriet may and shall have privilege to dispose of their several legacies by will as aforesaid, but not otherwise."

John Stoudt died intestate in 1870, leaving five children and a widow, the appellant, Matilda Urich, who intermarried with Daniel Urich. One of the children of John Stoudt, in 1876, petitioned the Orphans' Court for an inquest and partition of the real estate devised to his father in the aforesaid will, in which proceeding the other children of said John Stoudt were made parties. Before partition was made the appellants intervened and asked to be made parties, claiming that Matilda Urich was entitled to her dower in said land.

The court, Sassaman, A. L. J., in an opinion, said: "As this will was considered by this court in the case of Matilda Stoudt *v.* Samuel Merkel, and we then held that under it, John Stoudt, the husband of the said Matilda, had but a life-estate in the real estate which is now the subject of partition, which construction was subsequently affirmed by the Supreme Court (see Urich *v.* Merkel, 2 W. N. C. 550), we must refuse the prayer of the petitioners, and dismiss their petition."

From this decree this appeal was taken.

*George W. Biddle, Josiah Funck* and *H. Van Reed,* for appellants.—The testator in his will gives this real estate to "John Stoudt and his heirs," which devise is neither in terms nor by implication reduced to a life-estate by any subsequent clause. There is no devise over after the determination of the alleged life-estate. The provision that none of the children can sell, or assign or encumber is an attempt to engraft a repugnant condition on a fee-simple devise and is void. The testator has given to said son the right to dispose of said real estate by will. All these together, with the manifest intent, show that John Stoudt took a fee-simple under this will. Devising the fee the conditions in restraint of alienation were void: Reifsnyder *v.* Hunter, 7 Harris 41; Walker *v.* Vincent, Id. 369; McCullough's Heirs *v.* Gilmore, 1 Jones 370; Jauretche *v.* Proctor, 12 Wright 471; Doebler's Appeal, 14 P. F. Smith 9. The right to dispose of the estate by will carries the

[Urich's Appeal.]

fee: Girard Life Insurance and Trust Co. *v.* Chambers, 10 Wright 490; Anderson *v.* Jackson, 16 Johnson Rep. 388.

In the devises to the four daughters the testator has employed the same language as in the devise to the son. He clearly intended to give them all the same interest in the land, and this view is supported by the fact that upon the devise to Catharine there is a charge of $4350 to be paid one year after testator's decease, for if Catharine did not take a fee, but only a life-estate, such charge might impose a loss upon her: Fahrney *v.* Holsinger, 15 P. F. Smith 391; Lessee of Ferguson *v.* Zepp, 4 W. C. C. 649; and if Catharine took a fee it is plain that John did. The blending of real and personal estate in the same devise is another indication that a fee was intended: Morrison *et al. v.* Semple *et al.*, 6 Binn. 98; Steele *v.* Thompson, 14 S. & R. 101; Johnson *v.* Johnson, 1 Mumf. 548. The absence of the words "for life," or other language limiting or qualifying the estate, and the general tenor of the whole will plainly indicate that a fee was to pass with the restraining clauses against encumbrance and sale, and these latter we contend were void. If it was the intention that the owners should take an estate for life with remainder over to "children as heirs," then "children" is equivalent to "heirs," and the rule in Shelley's case will apply: Kepple's Appeal, 3 P. F. Smith 211; Physick's Appeal, 14 Wright 128; Nice's Appeal, Id. 148; Dodson *v.* Ball, 10 P. F. Smith 497.

*Amos B. Wanner* and *W. H. Livingood*, for appellees.—Although a fee may be given in the first part of a will it may be cut down by subsequent provisions therein: Greenleaf's Cruise on Real Property, 3d vol., 343. The fee was cut down to a life-estate because the devisees are deprived of the right of alienation; the land is directed to remain free for their *children or heirs*, and they are to have the use or income for their lifetime, which, together with a power to devise, are all consistent with a life-estate: Greenleaf's Cruise on Real Property, 3d vol., 324; Dodson *v.* Ball, *supra;* Yarnell's Appeal, *supra*. The charge of a gross sum upon the estate of Catharine cannot enlarge it into a fee when her estate is plainly indicated: Burkhart *v.* Bank, 2 Binn. 455. The testator designed that the status which should entitle parties in remainder to the estate on the termination of the life-estate should be that they were "children." It was not the intent to transmit the estate as an inheritance to an "heir," but as a remainder to specified objects of his bounty. By the word "heirs," he meant "children:" North *v.* Martin, 6 Simons 266; Fearne on Contingent Remainders 151; Guthrie's Appeal, *supra;* Findlay *v.* Riddle, 3 Binn. 139; Dodson *v.* Ball, *supra*.

Chief Justice AGNEW delivered the opinion of the court, March 18th 1878.

[Urich's Appeal.]

The will of Jacob Stoudt is brought before us a second time, in the hope of changing our opinion upon it. That opinion, though expressed in a short *per curiam*, to be found in 2 W. N. C. 550, was maturely formed. Its brevity is not evidence of want of examination, but of the necessity of condensation where there is so much to do. The able arguments of the counsel for the appellants have not changed our deliberate interpretation of the devise to John Stoudt. We agree with all said upon the first expression of this devise, if the testator intended to give him a fee, and used the word heirs in its legal acceptation. But that intention is the pivot of the question and must be carefully gathered from all parts of the will.

The first point of notice is, that on its face it appears that the will was not written by a learned lawyer, or a skilful conveyancer. Hence the language is not so conclusive of intent. The next matter is the evident intent of the testator to equalize his children in a general way; and the portion of John, the only son, is much larger than those of his sisters. John takes his "large farm" of three hundred acres, the grain seeded out, and all farming stock and utensils; Catharine, two parcels containing two hundred and twenty-five acres, and pays thereout $4300 to her sisters Sarah, Polly and Harriet, and they take smaller farms; Sarah one hundred and thirty-seven acres, Polly one hundred and ten acres and Harriet one hundred and eighteen acres. All the personal estate is then divided equally among the five children, John, Catharine, Sarah, Polly and Harriet, excepting additional to Polly and Sarah, $909 and $1000. It is thus evident that the charge of $4300 against Catharine's land was to produce equality of division, the children of Catharine taking the advantage of the increased size of her farm.

With this exhibition of general intent we come to the special intent of the testator, as to the quantity of estate limited to his children. It is brought out clearly in the fourth and second items from the end of the will. The fourth is in these words: "I herewith make known and declare it as my will that none of my aforesaid children shall have a right to sell or assign their land or property to them bequeathed as aforesaid; neither shall they have a right to encumber it with debts or liens, but the lands shall remain free for their children or heirs, and they, my said children, shall have the use, income and profit of the said lands and farms during their lifetime."

Now if we treat the word "heirs" in the principal devise to John Stoudt as conclusively descriptive of the quantity of his estate, the entire item first quoted is clearly repugnant and nugatory. But we cannot do this if by any proper interpretation the items can be reconciled. To hold to the legal and technical meaning of the word "heirs" we must assume that the testator was grossly ignorant of his own intent, and of the law also, when he came to

the quoted item. If this item contained the first two clauses only, perhaps we might reach this result, for then we should have only a technical term interpreted by the law (Criswell's Appeal, 5 Wright 288), and a mere attempt to clog the fee with illegal conditions. But when we reach the last two clauses in the same item, equally parts of the same thought and expressed *uno flatu*, we perceive we cannot do this without violating a clear intent of the testator fully and distinctly expressed. Thus he says, without break in the sentence, " But the lands shall remain free for their *children* or heirs." Here we have the clue to the prohibition against alienation and encumbrance. Why shall they not alien or encumber ? Because, says the testator, my will is the estate shall remain free (unaffected by these. acts) for their children. It is argued this purpose is defective, for *grandchildren* would not take if a parent died before the testator. This is against a settled rule that " children" will include grandchildren where it is necessary to serve the intent of the testator : Dickinson *v.* Lee, 4 Watts 82 ; Pemberton *v.* Parke, 5 Binn. 601. Various readings of the word " children" will be seen in the citations in Yarnall's Appeal, 20 P. F. Smith 341.

This clause further interprets the word " heirs." Here children, the primary word, precedes " heirs," the secondary, and the latter, as the alternative of the former, expresses the testator's own thought. Yet this clause standing alone might still leave the intention liable to some contest. But it is followed by another part of the same united sentence, leaving the intent free of all doubt. Thus—" and they my said children shall have the *use, income* and *profit* of the said lands and farms during their *lifetime.*" Here we have two express declarations of intent : 1. The subject of the children's devise is clearly defined—the precise interest of a life-tenant by the use, income and profits of the lands. Thus the usufructuary interest alone is given, and this is all a life-tenant can take. Not content with defining the subject, he becomes finally and fully explicit, and expressly defines the term or duration of the estate itself viz., " during their lifetime." Now the full meaning and intent of the testator is fully developed and clearly expressed. His own children shall have the use, income and profits of the lands devised for life only, without power to alien or encumber, in order that these lands shall remain after their death for their children.

Then follows the item next to the last, which confers a power to dispose by will. Here comes in another thought of the testator, perfectly natural and obvious. Remembering that one daughter is unmarried, and that some of his married children may die without leaving children, or that their children may differ in merits or be unequally provided for, and that he has just prohibited his devisees from enjoying more than a life-estate, he thinks of these contingencies, and now gives a power of appointment by will; and to

express this intent more distinctly, says, "to take effect after their decease." This is the crowning sheaf of his intention, and shows that he did not intend to give a fee-simple when he used the word "heirs" in the principal devise, as his own alternative expression for "children," or possibly with a vague conjecture of its meaning. If he used it in a general way, it is plain he clearly defined and restricted it, in the clause we have been considering, and the rule is that between repugnant clauses in a will the last shall govern. Our former decision must therefore stand, with these further reasons for it.

> Decree of the Orphans' Court dismissing the petition affirmed, with costs to be paid by the appellants, and their appeal is dismissed.