# Lauer, Appellant, *v.* Hoffman.

*Wills—Construction—Devise of real estate—Rule in Shelley's Case—Operation of rule—Estate in fee—Expressed intention.*

1. The touchstone, as unvarying as the needle to the pole, for the application of the rule in Shelley's Case, is a clearly expressed intention by a grantor or devisor that the remaindermen are not to take from him, but from his grantee or devisee of a life estate to which he has attached an inheritable succession in his grantee or devisee.

2. Testator by will provided as follows: "I give and devise to my said wife......my real estate......she to have and to hold the same for and during the term of her natural life,......and immediately after the death of my said wife I give and devise the said real estate to my only child and daughter for and during the term of her natural life......and after the death of my said daughter the said real estate shall descend to and become vested in the children of my said daughter, should she have any, in fee simple, and in default of such children, then such person or persons as she may by her last will and testament direct,—but in no event whatever shall the fee simple to the said real estate vest in my wife......or my daughter......during their lifetime or the lifetime of either of them." *Held,* that the daughter took a fee under the application of the rule in Shelley's Case to the clearly expressed intention of the father, that upon her death the

property should descend to her child, and subsequent words were utterly inoperative to prevent the legal consequence of the former, even though it be admitted that the testator intended that the rule in Shelley's Case should not apply to it.

Mr. Justice MESTREZAT and Mr. Justice MOSCHZISKER dissent.

Argued May 5, 1913. Appeal, No. 414, Jan. T., 1912, by plaintiff, from judgment of C. P. Berks Co., Nov. T., 1912, No. 36, in case of Frank Lauer v. Susan Elizabeth Hoffman and Charles P. Hoffman, her husband. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Case stated to determine marketability of title to real estate. Before ENDLICH, P. J.

The opinion of the Supreme Court states the case.

*Error assigned* was in entering judgment for defendant on case stated.

*Henry P. Keiser,* for appellant.—All mere technical rules of construction must give way to the plainly expressed intention of a testator, if that intention is lawful: Wood v. Schoen, 216 Pa. 425.

The word "children" is primarily one of purchase: Mannerback's Est., 133 Pa. 342; Harbster's Est., 133 Pa. 351; Fetherman's Est., 181 Pa. 349; Lancaster v. Flowers, 198 Pa. 614.

The daughter takes a life estate only: Cote v. Von Bonnhorst, 41 Pa. 243; West v. Vernon, 215 Pa. 545; Gross v. Stominger, 178 Pa. 64; Gittleman's App., 3 Walker 270.

*Joseph R. Dickinson,* with him *Jeremiah K. Grant,* for appellee.—It is well settled that a testator cannot create an estate in fee and then deprive the tenant of the incidents and rights of a tenant in fee, such as the uncontrolled power of disposition whether by will or deed, and restraints upon such powers are void: Doeb-

ler's App., 64 Pa. 9; Walker v. Vincent, 19 Pa. 369;
Woodside's Est., 188 Pa. 45.

OPINION BY MR. JUSTICE BROWN, May 28, 1913:

It is clear that the testator intended to give his daugh-
ter but a life estate in the property which she and her
husband have contracted to sell to the appellant; but
it is equally clear that, in giving her that estate, he
intended to make her a source of inheritable succession,
and she, therefore, took a fee under the unbending rule
in Shelley's Case as applied in this State. This is so
plainly demonstrated in the opinion of the learned presi-
dent judge of the court below that little, if anything,
can be well added to it, and it will be very briefly sup-
plemented.

The following is the substance of the clause in the
will of Franklin S. Bickley by which he devised the
real estate in controversy to his daughter, the appellee:
"I give and devise to my said wife......my real estate
situate on the north side of Penn street......in the
City of Reading...... She to have and to hold the
same for and during the term of her natural life, and
to have the rents, issues and profits thereof during the
same period. And immediately after the death of my
said wife I give and devise the said real estate to my
only child and daughter Susan Elizabeth for and dur-
ing the term of her natural life, she to have the rents,
issues and profits thereof during said period, and after
the death of my said daughter the said real estate shall
descend to and become vested in the children of my
said daughter, should she have any, in fee simple, and
in default of such children then such person or persons
as she may by her last will and testament direct,—but
in no event whatever shall the fee simple to the said
real estate vest in my wife......or my daughter Susan
Elizabeth during their life-time or the life-time of either
of them." No one familiar with the rule in Shelley's
Case would pretend that the appellee did not take an

estate in fee simple, if the testator had not added to the devise to his daughter in the following words: "But in no event whatever shall the fee simple to the said real estate vest in my wife......or my daughter Susan Elizabeth during their life-time or the life-time of either of them." If, by the preceding words of the testator, the daughter took a fee under the application of the rule in Shelley's Case to the clearly expressed intention of the father that, upon her death, the property should descend to her children, his subsequent words were utterly inoperative to prevent the legal consequence of the former, no matter how plain the latter may be of a contrary intent. Authorities might be multiplied as to this. In Doebler's App., 64 Pa. 9, the testator, Elisha Biggs, made the following devise to his son, Elisha H. Biggs: "I give and devise to my son, Elisha H. Biggs, the block known as the Exchange Building and the Old Arcade; beginning, &c....... I also give and devise to him my mansion-house after my wife's decease, should she remain unmarried, as also the lot of ground immediately below it, containing about one-half acre, more or less....... But he shall in nowise sell or alienate any of the above-described property, as it is intended that he shall have a life interest only in the same, with remainder over to his heirs in fee, subject to the payment of my debts, and subject also to the bequest to my wife, or any other bequests hereafter mentioned, and he shall in nowise come into possession of any of the above-described property until his twenty-second year." Surely these words were as clearly indicative of the intention of the testator that a fee simple should not vest in his son as are those of Franklin S. Bickley that his daughter should have but a life estate, but we held, through Mr. Justice SHARSWOOD, in the former case, that the son took a fee, and what was there said is not only peculiarly applicable to the case now before us, but conclusive of the right of the appellee to assert a title in fee simple: "The rule in Shelley's Case

is never a means of discovering the intention. It is applicable only after that has been discovered. It is then an unbending rule of law, originally springing from the principle of the feudal system, and though the original reason of it, the preservation of the rights of the lord to his relief, primer seisin, wardship and marriage has passed away, it is still maintained as a part of the system of real property which is based on feudalism, and as a rule of policy. It declares inexorably that where the ancestor takes a preceding freehold by the same instrument, a remainder shall not be limited to the heirs qua heirs, as purchasers. If given as an immediate remainder after the freehold, it shall vest as an executed estate of inheritance in the ancestor; if immediately after some other interposed estate, then it shall vest in him as a remainder. Wherever this is so, it is not competent for the testator to prevent this legal consequence by any declaration, no matter how plain, of a contrary intention. That is a subordinate intent which is inconsistent with, and must, therefore, be sacrificed to, the paramount one. Even if he expressly provides that the rule shall not apply—that the ancestor shall be tenant for life only and impeachable for waste—if he interpose an estate in trustees to support contingent remainders—or, as in this will, declare in so many words that 'he shall in nowise sell or alienate, as it is intended that he shall have a life interest only,' it will be all ineffectual to prevent the operation of the rule. No one can create what is in the intendment of the law an estate in fee, and deprive the tenant of those essential rights and privileges which the law annexes to it. He cannot make a new estate unknown to the law." Two other cases announcing the same rule are, Shapley v. Diehl, 203 Pa. 566, and Simpson v. Reed, 205 Pa. 53. It is needless to refer to more of our many cases in support of an unquestioned rule of property.

It may be conceded that the testator intended to say in effect, by the concluding words of the devise to his

daughter, that the rule in Shelley's Case should not apply to it; but, though this was his intention, he was as powerless to prevent the operation of that rule as he was to create a new canon of descent, if by the preceding words in the devise to his daughter for life he intended to make her the source of her children's inheritance of the property upon her death: Hileman v. Bouslaugh, 13 Pa. 334; Simpson v. Reed, supra. What are the words of the devise? "I give and devise the said real estate to my only child and daughter Susan Elizabeth for and during the term of her natural life, she to have the rents, issues and profits thereof during said period, and after the death of my said daughter the said real estate shall descend to and become vested in the children of my said daughter." Upon the death of the daughter her children are to take by descent—not by devise—and that descent must be from her, for the father had devised the property to her; and when he said that, upon her death, it shall "become vested in the children of my said daughter," his undoubted intention was that they should then come into the enjoyment and possession of the property by descent from her. In Moyer v. Rentschler, 231 Pa. 620, the words of the devise were: "After the death of my grandsons, as aforesaid, said property is then to descend or go into the possession of their children," and it was held that this gave the grandsons a fee.

The touchstone, as unvarying as the needle to the pole, for the application of the rule in Shelley's Case, is a clearly expressed intention by a grantor or devisor that the remaindermen are not to take from him, but from his grantee or devisee of a life estate to which he has attached an inheritable succession in his grantee or devisee. With this easily comprehended and constantly kept in mind, the rule in Shelley's Case is simple and "ill deserves the epithets" chronically bestowed upon it. We need go no further in vindication of the judgment below, which is now affirmed.

MR. JUSTICE MESTREZAT, dissenting:

We have uniformly held, as stated in the recent case of Wood v. Schoen, 216 Pa. 425, 428, that the purpose in construing a will is to ascertain the intention of the testator, so that it may be carried out in the disposition which he has made of his property. Technical rules of construction should only be resorted to and applied in the interpretation of a will when found necessary in determining the meaning of the instrument. In the present case there can be no doubt of the intention of the testator. In fact the majority opinion states that it is clear that the testator intended to give to his daughter but a life estate in the property. It is, however, held that she takes an estate in fee under the rule in Shelley's Case. This rule frequently tends to defeat the intention of the testator, and is enforced only where the language used by him in disposing of his estate must be construed under the rule. If his intention clearly appears by the language of the whole testament, Shelley's rule cannot be applied to a part of the will so as to defeat the manifest intention as disclosed by the whole instrument. The intent of a testator is to be gathered from his entire will rather than from the terms of a particular devise which, regarded alone, might be inconsistent with his testamentary scheme as a whole: Dean v. Winton, 150 Pa. 227, 232.

The dispositive part of the will is as follows: "I give and devise to my said wife Amelia my real estate......
She to have and to hold the same for and during the term of her natural life,...... And immediately after the death of my said wife I give and devise the said real estate to my only child and daughter Susan Elizabeth for and during the term of her natural life,......
and after the death of my said daughter the said real estate shall descend to and become vested in the children of my said daughter, should she have any, in fee simple, but in no event whatever shall the fee simple to the said real estate vest in my wife Amelia or my

daughter Susan Elizabeth during their lifetime or the lifetime of either of them." As conceded by the majority of the court, it is clear the testator intended to give his daughter but a life estate in the property. Why then is it held that he did not give her a life estate but a fee simple? Because, as stated in the opinion, it is "clear that in giving her that (life) estate he intended to make her a source of inheritable succession, and she, therefore, took a fee under the unbending rule in Shelley's Case as applied in this State."

But the rule is silent until the intention of the testator is ascertained: Guthrie's App., 37 Pa. 9. In the case at bar the testator did not intend to make the daughter the source of inheritable succession. He intended what he said that in no event should she take a fee simple estate, and hence could not be the source of succession. He intended that the children of the daughter should take the real estate from him and not from her. It may be conceded that, under our cases, the daughter would have been the source of succession if the testator, in disposing of the property, had used only the words: "After the death of my said daughter the said real estate shall descend to and become vested in the children of my said daughter." But those were not the only operative words of the devise. Other and emphatic language in the will interpreting and limiting the operation of those words were subsequently added by the testator. The scrivener understood the judicial construction of the clause just quoted and that it created a fee in the daughter; and it was to meet that interpretation and to prevent its consequence that he added immediately after the clause: "But in no event whatever shall the fee simple to the said real estate vest in my......daughter." The two clauses must be read together, and when thus read the language of the devise, under the settled rules of construction, vests in the daughter a life estate in the property, and the remainder in fee in her children. "It may be," says

STRONG, J., in Sheets's Est., 52 Pa. 257, 263, "that if the first clause of the sentence stood alone, it would give a fee simple to those children in the real estate, and an absolute interest in the personal property. But in the same sentence, as well as in those that follow it, the testator has declared in effect that such was not his intention." Our construction gives effect to every part of the will and carries out the unquestioned intention of the testator. In this view, the rule in Shelley's Case has no application, as the words of the devise do not bring it within the operation of the rule.

There is another well-settled rule which the doctrine of the majority opinion contravenes and that is that an estate of inheritance in real estate given in a will may be reduced to a lesser estate if the subsequent language of the instrument unequivocally shows that such was the intention of the testator. Mr. Justice STRONG, delivering the opinion in Sheets's Est., 52 Pa. 257, 263, and quoting from 1 Jarman on Wills 436, says: "No principle is better settled than that if a testator in one part of his will give to a person an estate of inheritance of lands, or an absolute interest in personalty, and in subsequent passages unequivocally shows that he means the devisee or legatee to take a lesser interest only, the prior gift is restricted accordingly. Subsequent provisions will not avail to take from an estate previously given, qualities that the law regards as inseparable from it, as, for example, alienability; but they are operative to define the estate given, and to show that what without them might be a fee, was intended to be a lesser right." This language is quoted and the principle approved in Snyder's Appeal, 95 Pa. 174; Good v. Fichthorn, 144 Pa. 287; Krebs's Est., 184 Pa. 222; Shower's Est., 211 Pa. 297.

The majority opinion construes the words "descend to" and "become vested in" as standing alone and not controlled or affected by the subsequent positive declaration that they shall not be interpreted so as to create

in the daughter a fee simple estate. This construction ignores the cardinal rule, time and again announced in all jurisdictions, that a will shall be construed from its four corners and that all parts of it shall be made to harmonize if possible. "It is one of the general rules in construing a will," says MERCUR, Chief Justice, in Miller's App., 113 Pa. 459, 467, "that all the parts thereof are to be construed in relation to each other, so, if possible, as to form one consistent whole. The intent of the testator is to be deduced from the language of the will taken as a whole. The inquiry is not necessarily limited to a consideration of the particular devises, but includes the whole instrument." Here, a particular devise is considered alone without regard to its relation to a correlated clause, thereby defeating the manifest intention of the testator, and vesting in the daughter a fee simple estate contrary to the language of the devise and to the testator's expressed declaration.

I would reverse the judgment and enter judgment for the plaintiff on the case stated.

MR. JUSTICE MOSCHZISKER, dissenting:

In view of the fact that the testator provides that, "In no event whatever shall the fee simple to the said real estate vest in......my daughter," it seems to me that this is the same as though he had provided that the words "shall descend to and become vested in" should be construed to mean, "shall descend from me and go to" (Donovan v. Woodworth, 234 Pa. 507). If the will is thus read, no violence is done to the words used, no departure is made from the rule in Shelley's Case, and the clear intent of the testator is given effect. I believe that the will can and should be so read, and for this reason I must dissent from the majority opinion.