them, that the plaintiff had himself to blame for not getting his damages promptly from the city. Such license ought not to have been given them; on the other hand the instructions asked for by plaintiff's second and third points should have been unqualifiedly given.

The second and fourth assignments of error are sustained, and the judgment is reversed with a venire facias de novo.

## Commonwealth Title Insurance & Trust Company v. Gross, Appellant.

*Wills—Construction—Real property—Rule in Shelley's Case.*

A testator bequeathed to his wife and son, share and share alike, all of his property, and provided that a certain house should "be a home for my wife and son as long as they agree. If rented, each to have a share alike. I want it understood that my property is not to be sold or mortgaged by either my wife and son. In case my wife dies before my son he is to have her share of the estate and if he dies before her she will have his share, without he has heirs who will receive his share then......in case of death of both the wife and son (he leaving no heirs) I want my estate to go" over. *Held,* the rule in Shelley's Case applied and the son took a fee.

Argued April 2, 1918. Appeal, No. 340, Jan. T., 1917, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Sept. T., 1917, No. 4455, for plaintiff in case of Commonwealth Title Insurance & Trust Company, Trustee for Thomas A. B. McCloskey and Theresa I. McCloskey, v. Samuel Gross. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Case stated to determine the extent of plaintiff's interest in certain real estate.

The facts appear in the following opinion of SHOEMAKER, J.:

This is a case stated submitted to the court upon an agreement that if the plaintiffs have an estate in fee in

the premises described in the deed tendered by them to the defendant, judgment should be entered for the plaintiffs, otherwise the judgment should be for the defendant.

The question presented by the case stated is the interpretation to be given to the will of James B. McCloskey, which reads as follows: '

"In making this my last will and testimony, I bequeath to my wife, Florence E. McCloskey, and my son, Thomas A. B. McCloskey, share and share alike of my estate after all my just debts are paid. The house, No. 4841 North Broad Street to be a home for my wife and son as long as they agree. If rented, each to have a share alike. I want it understood that my property is not to be sold or mortgaged by either my wife and son. In case my wife dies before my son he is to have her share of the estate and if he dies before her she will have his share, without he has heirs who will receive his share then. I want my wife, Florence E. McCloskey, to have all household goods and effects.

"I appoint my wife Executor without bond of this my last will and testimony revoking all others previously made."

"In case of death of both my wife and son (he leaving no heirs) I want my estate to go to my mother's half-sister Annie McCloskey, wife of Owen and her heirs, share and share alike."

McCloskey died March 11, 1907, leaving to survive him his wife, Florence, and his son, Thomas A. B.

Florence, the widow of James B., died January 3, 1915.

By deed dated August 15, 1917, and duly recorded, Thomas A. B. McCloskey and wife granted and conveyed the premises No. 4841 North Broad street to the Commonwealth Title Insurance and Trust Company as trustee for the grantors.

By agreement dated August 15, 1917, the said Commonwealth Title Insurance and Trust Company, trustee, agreed to sell to Samuel Gross, who agreed to pur-

chase, the said property free and clear of assessments, liens and encumbrances; the title to be good and marketable.

On October 8, 1917, the plaintiffs tendered a deed duly executed by themselves, conveying to defendant the said premises free and clear of all encumbrances, and demanded the balance of the purchase-money agreed upon. The defendant refused to accept the deed, or pay the purchase price, alleging that the grantors did not have a good and marketable title in fee in the premises, whereupon plaintiffs brought this suit to recover the balance of the purchase-money.

The will provides that "In case my wife dies before my son he is to have her share of the estate and if he dies before her she will have his share, without he has heirs who will receive his share then." The survivorship in favor of the wife is conditioned upon the son dying without heirs. In the last clause of the will it is provided "In case of death of both my wife and son (he leaving no heirs) I want my estate to go to my mother's half-sister Annie McCloskey, wife of Owen and her heirs, share and share alike."

The son is living and has children. Did the son take a fee? The present Chief Justice said, in Kemp v. Reinhard, 228 Pa. 147:

"The rule in Shelley's Case is not a means of ascertaining the intention of a testator, nor is it one of the construction of a will. It is one of law, unbending in its application, when the intention of the testator is ascertained that the heirs of his devisee of a freehold estate are to take from the devisee qua heirs. When such intention is ascertained the heirs take by descent from the devisee, and there is, therefore, vested in him an estate of inheritance: Doebler's App., 64 Pa. 9; Shapley v. Diehl, 203 Pa. 566. 'It is therefore always a precedent question, in any case to which it is supposed the rule is applicable, whether the limitation of the remainder is made to the heirs in fee or in tail, as such, and in solving

this question, the rule itself renders no assistance.    It is silent until the intention of the grantor or devisor is ascertained.    But if that intention is found to be that the remaindermen are to take as heirs of the grantee or devisee of the particular freehold, instead of becoming themselves the root of a new succession, the rule is applied, though it may defeat a manifest intention that the first taker should have but an estate for life.    It is very carefully to be noted, that in searching for the intention of the donor or testator, the inquiry is not whether the remaindermen are the persons who would have been heirs, had the fee been limited directly to the ancestor. The thing to be sought for is not the persons who are directed to take the remainder, but the character in which the donor intended they should take.    In the very many cases in which the question has arisen whether the rule was applicable, the difficulty has been in determining whether the intention was that the remaindermen should take as heirs of the first taker, or originally as the stock of a new inheritance': Guthrie's App., 37 Pa. 9.'"

Applying the above rules of interpretation to the will in this case, it seems manifest that in the first paragraph of the will it is clearly provided that the "heirs" to take were as heirs of the son, the language used being, that if the son "dies before her (the widow) she will have his share, without he has heirs, who will receive his share then."

Reading the third clause in connection with the first clause, it is, in our opinion, clear that such was the meaning of the testator's words, as the devise to Annie McCloskey was only to take effect in case the son died "Leaving no heirs," thus limiting the character of the persons who were to take upon the death of the son, to such as were his heirs, and "to constitute such devisee a source of inheritable succession": Harrison v. Harris, 245 Pa. 397, and the rule in Shelley's Case applies: Stathers v. Renz, 251 Pa. 315.

The court entered judgment for the plaintiffs on the case stated.   Defendant appealed.

, *Error assigned* was the judgment of the court.

*Morris Wolf*, with him *Horace Stern,* for appellant.

*William Henry Kern,* for appellees.

PER CURIAM, June 3, 1918:

.This judgment is affirmed on the opinion of the court below upon which it was entered.

---

# Wood's Estate.

*Trusts—Dry trusts—Active trusts — Beneficiaries, sui juris —* *Termination.*

1. Where an instrument creating a trust for persons sui juris creates no limitation over of either the income or the principal of the estate and there are no other estates in interest to be preserved and no ultimate purpose of any kind requiring the continuance of the trust is expressed or can be implied from its terms except the mere payment of the income to the cestui que trust, a termination of the trust may be decreed.

2. A testator bequeathed to trustees certain personal property and the proceeds of certain real estate to be held in trust by them for the use of his two daughters, "the proceeds to be equally divided between them......and desire said trustees to pay them equally the net proceeds of the above-named property derived from dividends, rents and interest after payment of taxes and current repairs. And in any case a majority of the said trustees deem it for the interest and safety of the property so bequeathed to (the daughters, naming them) with their consent, to sell any of the mentioned trust property and invest it in the bonds of the United States. I understand that in this devise that the said (daughters, naming them) shall have power to dispose of equal portions of this estate so held for them in trust by will."

One of the daughters died and the other, who was sui juris, applied for a termination of the trust. *Held,* the court properly declared the trust terminated and awarded one-half of the estate to