## Pfeifle v. Bethlehem Public Library, Inc.

*Herbert J. Hartzog*, for plaintiffs; *Booth & Barthold*, for defendant.

STEWART, P. J., April 2, 1928.—This is a case stated to determine whether plaintiffs can give a good title to land which they have agreed to sell defendant. The question depends upon the interpretation of the will of Theophilus Horlacher. From the agreed facts, it appears that testator died on Aug. 18, 1883, seized of the land mentioned in the will. He left surviving him a widow, a sister and an adopted daughter. She married George Ott. They had four children. After the death of the wife and sister, the adopted daughter and her children, who were then all of age, with their respective husbands and wives, conveyed the real estate to Robert Pfeifle, the plaintiff. Horlacher's will was made in two parts. The entire will is a part of the case stated. The relevant parts of the first part are:

"Item. It is my will and I do order and direct that all my real estate, except my homestead, consisting of a brick house, and lot of ground containing in front on Fourth Street one hundred and forty (140) feet by 180 feet on Elm Street, South Bethlehem, to an alley, shall be sold by my Executors hereinafter appointed, by public sale or sales, for the best price that can be obtained for them, and to this end I give unto my said Executors full power and authority to make deed or deeds in fee simple to the purchasers as full and complete to all intents and purposes as I could do if living: and the money arising therefrom, together with my other money shall be invested and

secured by bonds and mortgages or other good and sufficient security and the income arising therefrom, to be for the use and enjoyment and comfort of my said wife Elizabeth and my said sister Eliza S. during their natural lives; and at the death of either of my said wife or my said sister; then my adopted daughter, Alice Elizabeth Horlacher (being a daughter of Samuel D. Moser) shall take the place of the deceased, and at the death of both of my said wife and my said sister, then my said homestead shall be the property of my adopted child, Alice E. Horlacher, her heirs and assigns forever, should, however, my said daughter Alice E. Horlacher die without issue, then it is my will that my said homestead shall revert back to my lawful heirs. . . .

"Item. The above is the first part of my last will and testament, and my will as to the distribution of my moneys, etc., after the death of both my said wife and my said sister, is contained in the second part of my will which is sealed separately and shall not be opened until after the death of both my said wife and my said sister.

"Item. It is my will that the homestead above described and excepted not to be sold, shall be for the exclusive use of my wife and my said sister, during their natural lives."

That part of the will was dated Aug. 9, 1878, and was probated on Sept. 5, 1883.

The relevant parts of the second part are:

"I, Theophilus Horlacher, of the Borough of South Bethlehem in the County of Northampton and State of Pennsylvania, Yeoman, being of sound mind, memory and understanding, do make and publish this my second part of my last will and testament as referred to in the first part of my will to be as follows, viz: . . .

"Item 31. I give and bequeath unto my adopted daughter, Alice Elizabeth Horlacher, all that certain lot of ground, situate on the southwest corner of Fourth and Elm Streets, South Bethlehem, being 140 by 180 ft. now my homestead, together also with the southern half of the plot on Niskey Hill Cemetery where she shall have undisputed right to bury such of her friends or family as she may see proper. The homestead herein bequeathed to my adopted daughter Alice Elizabeth Horlacher, it is expressly understood that she shall have and enjoy during her natural lifetime but shall not have the right to sell the same by deed in fee simple but in case she shall die without issue the same shall revert back to my known heirs.

"All the rest and residue of my estate found in my name after all my bequests are filled and not otherwise bequeathed herein shall be the property of my said adopted daughter Alice Elizabeth herein named absolute."

That part of the will was dated July 31, 1883, and was probated on Dec. 17, 1900.

The second part of the will should be treated as if it were a later clause of the entire will where it conflicts with the first part. In the item quoted above, he says: "The above is the first part of my last will and testament." Then he confines the disposing part of "my will" to what he says "is contained in the second part of my will," which he directs not to be opened until after the death of his wife and sister, and, again, in the second part, he said ."this my second part of my last will and testament as referred to in the first part of my will to be as follows, viz." Unless the words "my moneys" and "etc." mean real estate, testator did not intend the second part of his will to cover more than personal property, and an inspection of the will shows that thirty items dispose of personal property. Only one item, No. 31, refers to the homestead. It should also be noted that there is a difference in dates. The

two parts are not dated the same day. There is an interval of five years between the date of the first part and the date of the second part. However, this is not material. The two parts speak as of the date of his death. In Wikoff's Appeal, 15 Pa. 281, the syllabus is: "It is not essential to the validity of a will that the different parts of it be physically connected: it is sufficient if they are connected by their internal sense or by a coherence and adaptation of parts." In Price et al. v. Maxwell et al., 28 Pa. 23, the syllabus is: "Where there are two wills in some respects inconsistent, the later revokes the former only so far as they are inconsistent with each other, unless there is an express clause of revocation." In Nelson's Estate, 147 Pa. 160, the syllabus is: "Where a second will in express terms revokes a former will, but refers to certain bequests in the former will and re-enacts them, both wills are entitled to probate, but the executor named in the former will is not entitled to letters testamentary." In Grubb's Estate, 174 Pa. 187, the syllabus is: "Where a will is written in three chapters or sections on three different pieces of paper, each being signed by the testator, and all the sections being necessary to a complete testamentary disposition of the property, the three papers taken together constitute the will." We think that under the above authorities the two parts must be considered as the testator said they were, one will. While it is not important to this discussion, there should have been one probate of the two parts, even though the testator directed that the second part "shall not be opened until after the death of both my said wife and my said sister." The probate of a will is a judicial act. It fixes the fact of testator's death and makes a record of his disposition by will, even though the disposition of his property may be directed to be made at a future date. It is perfectly plain that under the first part of testator's will his adopted daughter took the homestead in fee simple. By the clause above quoted, he gave the homestead to his wife and sister for life. At that time he had no intention of giving the homestead to his adopted daughter for life. The words were "at the death of both my said wife and my said sister, then my said homestead shall be the property of my adopted child, Alice E. Horlacher, her heirs and assigns forever, should, however, my said daughter Alice E. Horlacher die without issue, then it is my will that my said homestead shall revert back to my lawful heirs." It must be remembered that testator died in 1883. The Act of July 9, 1897, P. L. 213, by its express terms, does not apply to any will made before July 1, 1897, and the 14th section of the Wills Act of June 7, 1917, P. L. 403, has no application to wills made prior to Dec. 31, 1917. Hence the present will must be interpreted without reference to those acts. In the leading case of Mickley's Appeal, 92 Pa. 514, the syllabus is: "If a bequest be made to a person absolute in the first instance, and it is provided that in the event of death or death without issue another legatee or legatees shall be substituted to the share or legacy there given, it shall be construed to mean death or death without issue before the testator. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an issue for life without clear evidence of such intent." Innumerable authorities might be cited to the same effect. Subject, therefore, to the life estate of the wife and sister, the adopted daughter could have conveyed the fee. However, five years after the date of the first part, he executed the second part, and it is contended that he cut down the fee previously granted to his adopted daughter and gave her only a life estate. In the first part he gave it to her, "her heirs and assigns forever." In item 31 he does not use these technical words. The words are: "I give and bequeath unto my adopted daughter, Alice Elizabeth Horlacher," &c. If there were nothing more in the

item, the 9th section of the Act of April 8, 1833, P. L. 249, would be sufficient to give her a fee simple, but he said: "The homestead herein bequeathed to my adopted daughter Alice Elizabeth Horlacher, it is expressly understood that she shall have and enjoy during her natural lifetime but shall not have the right to sell the same by deed in fee simple but in case she shall die without issue the same shall revert back to my known heirs." It will be noted that the language just used is almost exactly like the language he used when he created the life estate for his wife and sister. This will is very inartistically drawn, and the case affords another striking example of the foolishness of employing stupid draughtsmen to write wills. Unfortunately, each testator dies without knowing how incompetent the draughtsman was, and contests over wills rarely attract attention beyond the circle of those immediately interested. We must endeavor to find out what the testator meant. In Tarter's Estate, 291 Pa. 458, the syllabus is: "A devise will be construed to pass a fee simple title unless it appears, by a devise over, or by words of limitation or otherwise in the will, that testator intended to give a less estate. This rule applies, even though, in a later part of the same sentence, a life estate in another property is devised to the same person. . . . Precedents are of little value in the construction of wills; under dissimilar circumstances and with different contexts, the same words may express various intentions, and, hence, be construed differently. Where words sufficient to vest an absolute estate are used in a will, such interest will not be cut down by a subsequent provision which does not indicate a clear intent to take away the estate previously given." In that case, Mr. Justice Simpson follows two well-considered cases. In Cross et al. v. Miller, 290 Pa. 213, the syllabus is: "Where it is apparent that the dominant purpose of the testator is to devise a fee simple estate, and subsequent language indicates merely a secondary or subordinate intent to strip the estate thus given of one or more of its inherent attributes, the law will hold that this cannot be done." In that case, the attempt was made to control the descent of a title she gave in fee. It was held that this could not be done. In the other case, Reiff v. Pepo, 290 Pa. 508, the syllabus is: "Where words sufficient to vest a fee are first used in a devise, and those which follow apparently indicate a contrary intention, the court must, in each case, after considering the whole will, decide as to the primary general intent of the testator; if it be to give an absolute estate, then subsequent words expressing a secondary and particular intent cannot restrict the gift or strip the fee of its ordinary attributes; but if, after considering the will as a whole, the court finds that the devise expresses an unequivocal intention to give less than a fee, and that what otherwise might be construed as a fee was intended only as a less estate, it must be held accordingly. . . . Where a testatrix 'gives' to her grandson, a boy, eleven years of age, a house and lot, and in the same clause says 'he is not to sell said house and lot, and after his death the same to belong to and invest in and become the property of his children, share and share alike, to be theirs absolutely,' the grandson takes an estate for life and not a fee in the house and lot." Mr. Chief Justice Moschzisker very carefully goes over all the cases on this general subject and the review is most helpful.

We must also note another fact. Testator said his adopted daughter "shall not have the right to sell the same by deed in fee simple." Standing alone, that clause amounts to nothing. If he gave an estate in fee simple, one of its inherent attributes, the power to sell, cannot be taken away. That principle is well settled. In Reifsnyder v. Hunter, 19 Pa. 41, Mr. Justice Gibson said: "'I do give and bequeath to my son John and his heirs' are the words of the first clause of this devise. No one could limit a fee simple more artistically

and precisely. 'With this proviso,' he continues, 'that my son John shall not have any right nor power to sell nor convey the said farm,' an impotent attempt to give title to property without the incidents of ownership. Again: 'But at his death, all the right, title and interest shall be and remain perfect in his lawful heirs.' That expresses, in other words, what he had expressed before, and signifies no more than his notion of the intended disability. But whatever his plan, he has used technical words without anything to qualify their meaning, except ignorance of his inability to prescribe an impossible condition; from which it would be unsafe to infer that he stumbled on them by chance or to mould the fee so as to give effect to a conjectural intention." In the late case of Pattin v. Scott, 270 Pa. 49, the same principle was applied where the time of sale was limited to twenty-five years. We have already referred to the omission of the words in item 31, "her heirs and assigns forever," but there is another very significant omission or blunder in this item. The case stated states that the adopted daughter has four children. Suppose she still owned the property and died today. Would these children take? Testator does not use any of the expressions which are found in most of the will cases that have been cited to us. He does not, for example, say that after his adopted daughter's death the property shall go to her children, or to her issue, or to her heirs, or use words of that kind. If he had so provided, we would have the question presented whether his adopted daughter had an estate tail, which, under the Act of April 27, 1855, P. L. 368, would be turned into a fee simple. The only contingency he provides for is that if "she shall die without issue," which, in all human probability, will never take place. We can infer, with almost absolute certainty, that he wished his adopted daughter's issue, heirs or children to have this property after her death. That inference results from the devise of the property in fee simple as expressed in the first part of the will, from the Act of 1833, *supra*, and from the residuary clause, all of which show his intention that his adopted daughter should have everything, as he said in the residuary clause, "absolute." In fact, everything that we can discover in the two parts of the will, except "she shall have and enjoy during her natural lifetime," shows that his dominant purpose was to give her a fee simple, except that she could not sell same, which clog, under the law, was ineffectual. However, is the fact that he did not give the property to his daughter's issue in so many words important? Under the authorities, the gift to her issue is implied. In Beilstein v. Beilstein, 194 Pa. 152, the syllabus is: "A devise over in case a daughter should die 'without leaving a family' is an implied devise to her family if she should leave one. A devise to a daughter of the income of real estate 'as long as she lives, but should she die without leaving a family,' then over, means death without issue or heirs of the daughter's body, and this refers to an indefinite failure of issue, which creates a fee tail in the first taker, enlarged to a fee simple by the statute." To the same effect is Lippincott's Estate, 276 Pa. 283, and List's Estate, 283 Pa. 255. With this interpretation, the adopted daughter takes a fee tail, enlarged to a fee simple under the Act of April 27, 1855, P. L. 368. The authorities in Pennsylvania supporting this view are numerous. See Eichelberger v. Barnitz, 9 Watts, 447; Hackney et al. v. Tracy et al., 137 Pa. 53; Potts v. Kline, 174 Pa. 513; Shoup v. De Long, 190 Pa. 331; Wilson v. Heilman, 219 Pa. 237; Leonard v. Leister, 233 Pa. 475; Kyner v. Hockersmith, 235 Pa. 586, and Commonwealth Title Ins. and Trust Co. v. Gross, 261 Pa. 476. Two cases may be referred to which, on their facts, are very similar to this case. In Grimes v. Shirk, 169 Pa. 74, the syllabus is: "Testator directed as follows: 'I give and devise to my adopted daughter Hester

. . . all that certain messuage . . . for and during the term of her natural life. And after the death of my said adopted daughter, I give and devise the reversion or remainder of the real estate herein devised to her, to her lawful issue, to have and to hold the same in common to them, their heirs and assigns forever. And in case the said Hester should die without leaving lawful issue, then the aforesaid real estate shall revert to my estate, and I give and devise the same to my heirs under the intestate laws:' *Held*, that Hester took an estate in fee in the land devised to her." In Hannon *v.* Fliedner, 216 Pa. 470, the syllabus is: "Testator, after giving a life estate to his wife and sister-in-law, directed as follows: 'After the decease of my wife and sister-in-law and the termination of the life estates to them herein before mentioned, and subject to the same, I give, devise and bequeath to my daughter, her heirs and assigns all my property, real, personal and mixed of every kind and description, but in case of the decease of my said daughter, without lawful issue surviving her, then and in such case I give, devise and bequeath all my property and estate of every description, real, personal and mixed to my son-in-law, his heirs and assigns forever:' *Held*, that the daughter, surviving her father, took an estate tail which, under the Act of April 27, 1855, P. L. 368, was converted into an estate in fee simple." We have already referred to the residuary clause, and it is: "All the rest and residue of my estate found in my name after all my bequests are filled and not otherwise bequeathed herein shall be the property of my said adopted daughter Alice Elizabeth herein named absolute." Testator's dominent purpose was to give everything not otherwise bequeathed to his adopted daughter "absolute." If there was any remainder or reversion of the homestead, it was to be hers under this clause. The case is somewhat like Smith *v.* Bloomington Coal Co., 282 Pa. 248, the syllabus of which is: "Where testator first devises certain real estate to his wife expressly for life and subsequently in the same item devises and bequeaths to her in general terms the residue of his estate, including real estate other than that thereto devised to her for life, and then enjoins upon her to make a will leaving such residue equally between his and her heirs, the wife takes an estate in fee in the residue."

But it is contended that an examination of the will will show that testator's dominant intent was to give his adopted daughter only a life estate, and that he intended to cut down the fee in the first part of his will by the clause above quoted in the second part of his will. The leading case is Urich *v.* Merkel, 81 Pa. 332, the syllabus of which is: "A devise was 'to my son John and to his heirs all my farm, . . . together with all the buildings, . . . farming stock and utensils belonging to the farm, unto the said John and to his heirs.' There were similar devises to other children. The testator further declared that none of his children should sell their land or encumber it, 'but the land should remain free for their children or heirs, and my said children shall have the use, income and profits . . . during their lifetime.' He gave his children the right to make wills, so that either of them should 'have privilege to dispose of their several legacies by will, but not otherwise:' *Held*, that John took but a life estate. The intention of the testator, gathered from all parts of the will, was to give a life estate, not merely to restrict the devisee's power over a previously given fee simple." The real discussion is contained in Urich's Appeal, 86 Pa. 386. That case has been followed many times. See Shalters *v.* Ladd et al., 141 Pa. 349; Shower's Estate, 211 Pa. 297, and Smith *v.* Piper, 231 Pa. 378, and McElwain *v.* Whitacre, 251 Pa. 279. A list of these authorities is given in Reiff *v.* Pepo, 290 Pa. 512. See, also, Field's Estate, 266 Pa. 474; Wettengel's Estate, 278 Pa. 571; Deeter's Estate, 280 Pa. 135;

Robinson's Estate, 282 Pa. 531, and Stanton et al. *v.* Guest et al., 285 Pa. 460. We have carefully read those cases, and, while it is sometimes hard to distinguish them, we think that no one of them rules the present case.

It is also contended that the rule in Shelley's Case does not apply. In the leading case of Guthrie's Appeal, 37 Pa. 9, the syllabus is: "Although the rule in Shelley's Case is the law of Pennsylvania, and is to be enforced whenever it is truly applicable, there is no reason why it should be more extensively applied here than in England. In every case to which it is supposed to apply, it is always a precedent question whether the limitation of the remainder is made to the 'heirs in fee' or 'in tail' *as such,* and the rule is silent until the intention of the grantor or devisor is ascertained. If the intention of the testator be that the remaindermen should take *as the heirs* of the grantee or devisee of the particular freehold, instead of themselves becoming the root of a new succession, the rule is applied, although it may defeat a manifest intention that the first taker should have but an estate for life. In searching for this intention, the inquiry is not whether the remaindermen are the persons who would have been heirs if the fee had been limited to the ancestor, but in what character the donor intended they should take the remainder, whether as heirs of the first taker or, originally, as the stock of a new inheritance." That case has been followed down to the last case cited. In Stout *v.* Good, 245 Pa. 383, Mr. Justice Moschzisker said: "The rule governs whenever the will shows a clear intent to vest a fee simple or a fee tail in the heirs of the first taker, *qua* such heirs, even though the interest of such first taker is expressly stated to be but a life estate, and even though the technical word 'heirs' or the phrase 'heirs of his body' is not used: Lauer *v.* Hoffman, 241 Pa. 315. But when neither the word nor the phrase in question is present, then, before the life estate can be enlarged to a fee, it must clearly appear from the language employed that the remaindermen are to inherit from the original devisee and not to take as devisees directly from the testator, particularly when, as is so often the case, the application of the rule will have the effect of defeating the testator's express declaration that the first taker shall have but a life estate: Kemp *v.* Reinhard, 228 Pa. 143. Therefore, in the absence of technical words of limitation, the rule should never be applied unless a paramount intent to make the first devisee a source of inheritable succession plainly appears; but where the language used brings the case within the rule, the fact that the testator desired that it should not operate is of no importance: Grimes *v.* Shirk, 169 Pa. 74, 76; Lauer *v.* Hoffman, *supra;* Shapley *v.* Diehl, 203 Pa. 566, 569." Again he said: "While 'issue' is most often used as a word of limitation, yet it is not technically so to the same degree as 'heirs' or 'heirs of his body,' and it yields readily to a context that indicates its use as a word of purchase: Taylor *v.* Taylor, 63 Pa. 481, 483; Beckley *v.* Reigert, 212 Pa. 91, 93; O'Rourke *v.* Sherwin, 156 Pa. 285, 291; Robins *v.* Quinliven, 79 Pa. 333; Powell *v.* Board of Domestic Missions, 49 Pa. 46, 53. Where the devise is to one for life, with remainder to his children, then a subsequent reference to the death of the life-tenant 'without issue' or 'leaving no issue' ordinarily will be construed to mean such issue as those previously mentioned, and not an indefinite failure of issue: Curtis *v.* Longstreth, 44 Pa. 297, 302-3; Sheets's Estate, 52 Pa. 257, 268; Carlisle *v.* Carlisle, 243 Pa. 116. The rule in Shelley's Case is not a rule of construction, but of law, and it is never applied until the meaning of the testator is first ascertained: Yarnall's Appeal, 70 Pa. 335, 340. If the words of the will show that the testator intended the remaindermen to take directly from him, and not by inheritance from the devisee of the life estate, then the rule has

no application: Kemp *v.* Reinhard, 228 Pa. 143; on the other hand, if they show a contrary intention, the rule applies: Lauer *v.* Hoffman, 241 Pa. 315." English's Estate, 270 Pa. 1, is also an interesting case, but it was decided on the effect of the Act of July 9, 1897, P. L. 213. We are of opinion that the rule applies here, and that Alice Elizabeth Horlacher took an estate in fee simple.

And now, April 2, 1928, judgment is entered in favor of the plaintiffs and against the defendant for the sum of $18,000.

From Henry D. Maxwell, Easton, Pa.